DIEGO MIRANDA VÉLEZ Y OTROS, demandantes y peticionarios, *v.* MUNICIPIO DE BARCELONETA, demandado y recurrido.

*Número:* CE-88-321       *Resuelto:* 18 de noviembre de 1988

*José A. Bravo Abreu,* abogado de los peticionarios; *Rafael Ortiz Carrión, Procurador General,* y *Anabelle Rodríguez Rodríguez, Procuradora General Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Diego Miranda Vélez y su esposa Bienvenida Rodríguez Santiago cuestionan la negativa del Tribunal Superior, Sala de Arecibo, a acceder al retiro de fondos presentado por su hija, la menor *emancipada* Abigaíl Miranda Rodríguez. Erró el ilustrado foro de instancia.

## I

En virtud de sentencia dictada el 2 de diciembre de 1987, la Universal Insurance Company depositó el 11 de febrero de 1988, en la Secretaría de dicho tribunal, la suma de $30,000 a favor de la menor Abigaíl. Siete (7) días después, el 18 de febrero, la menor y sus padres Miranda-Rodríguez solicitaron el retiro de esos fondos.

El tribunal celebró una vista a la cual comparecieron todas las partes, incluso la Procuradora de Relaciones de Familia. Determinó que Abigaíl, nacida el 12 de febrero de 1969, de diecinueve (19) años de edad, era estudiante universitaria. Por "Contrato de Emancipación" otorgado el 20 de enero de 1988 ante el notario José A. Bravo Abreu, sus padres la emanciparon con su consentimiento. El evento, bajo el Núm. 261, fue archivado el 25 de enero en el Registro Demográfico.

Abigaíl solicitó el retiro de los $30,000 para depositarlos en una institución bancaria y hacer retiros periódicos para su educación universitaria. Su tenencia y control evitaría te-

ner que acudir al tribunal a demostrar la utilidad y conveniencia de tales retiros.

La Procuradora de Relaciones de Familia, una vez comprobado que Abigaíl había sido emancipada por sus padres conforme a derecho, no objetó el pedido. A su juicio, no era necesaria su intervención. Originalmente, el tribunal autorizó la solicitud. Sin embargo, después, motu proprio, dejó sin efecto la misma "luego de la más ponderada evaluación y reflexión crítica en torno a los distintos aspectos relacionados con los mejores intereses de la menor en cuestión". Petición de *certiorari*, pág. 3. Señaló y celebró una vista de continuación el 18 de marzo de 1988, a la cual comparecieron Abigaíl, sus padres, su abogado y el Ministerio Fiscal. En esta ocasión dicho funcionario no se opuso al retiro de fondos.

Oportunamente, el tribunal dispuso que "ante la ausencia de hechos y propósitos acreditativos de que la menor tiene la capacidad para administrar los fondos solicitados en forma provechosa y productiva", declaró *sin lugar* la solicitud. Petición de *certiorari*, pág. 3. Mediante orden de mostrar causa, revisamos.

## II

■ Conforme la arquitectura del Art. 232 del Código Civil, 31 L.P.R.A. sec. 901, existen cuatro (4) clases de emancipación: la concedida por el padre o la madre que ejerza la patria potestad, la matrimonial, la judicial y la proveniente de la mayoría de edad. *García et al. v. Garzot*, 18 D.P.R. 866 (1912).

■ En lo concerniente al recurso, el Art. 233 del Código Civil dispone:

*El menor puede ser emancipado para regir su persona y administrar sus bienes*, o para el solo *efecto de la administración de los últimos*, por su padre, por su madre o por el padre

y la madre conjuntamente o por el de ellos que ejerza sobre el menor la patria potestad, cuando dicho menor hubiese cumplido la edad de dieciocho años. Esta emancipación *tendrá lugar* por la declaración del padre o de la madre, o de ambos cuando ejerzan conjuntamente la patria potestad, hecha *ante notario público* en presencia de dos testigos y con el consentimiento del menor. Deberá anotarse en el registro civil, no produciendo efecto entre tanto contra terceros. (Énfasis suplido.) 31 L.P.R.A. sec. 911.

■ Por otra parte, el Art. 237 del Código Civil explica que "[l]a emancipación habilita al menor para regir su persona y bienes como si fuera mayor; pero hasta que llegare a la mayor edad no podrá el emancipado contraer promesa u obligación alguna que exceda del importe de sus rentas por un año. Tampoco podrá gravar ni vender bienes inmuebles suyos sin consentimiento de su padre, y el de su madre, cuando ambos ejerzan la patria potestad conjuntamente o el de ellos que la ejerza por sí solo y, en su caso, sin el de su tutor. Tampoco podrá comparecer en juicio sin las asistencias de dichas personas". 31 L.P.R.A. sec. 915.

■ Los principios legales expuestos reflejan, sin lugar a dudas, que ipso jure un menor emancipado está capacitado para regir su persona y sus bienes como si fuera mayor de edad. El texto está libre de ambigüedades. Sus únicas excepciones nada tienen que ver con la controversia ante nos. Bajo este estado de derecho Abigaíl, como menor emancipada, podía retirar sin limitación alguna los fondos consignados en el tribunal. No tenía que justificar su utilidad o conveniencia ni someterse al trámite del Art. 614 del Código de Enjuiciamiento Civil, preceptivo de la solicitud de autorización judicial para actos referentes a menores o incapaces, o a sus bienes. 32 L.P.R.A. sec. 2721.

J. Puig Brutau, en su obra *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. I., Vol. 1, págs. 339–340, nos comenta:[1]

Este estado civil de menor emancipado se diferencia claramente del estado civil de menor edad, por cuanto éste comporta —según se ha visto en el apartado anterior— un principio general de incapacidad de obrar, sustituido comúnmente por la actuación del representante legal del menor, que le sustituye en su actividad jurídica. *En cambio, el menor de edad emancipado aparece investido de una amplia facultad de poder obrar por sí mismo —y en esto se equipara al mayor de edad—*, si bien esta capacidad de obrar no es tan extensa como la de los mayores de edad, por cuanto para ciertos actos —aquellos que el legislador de 1889 reputaba más trascendentales— exige la ley un complemento de capacidad para la total eficacia de los actos realizados por el menor de edad emancipado. (Énfasis suplido.)

Y sobre el efecto jurídico de la emancipación en la esfera patrimonial, señala:

También aquí juega un principio general de equiparación del menor emancipado al mayor de edad, con la natural consecuencia de que podrá aquél en la generalidad de los casos actuar por sí solo (o bien a través de un apoderado voluntariamente designado al efecto). Pero así como en relación a las otras esferas de actividad del menor emancipado el art. 317 C. c. no establece limitación alguna a su capacidad de obrar, en esta esfera patrimonial el precepto exige el consentimiento de determinadas personas para realizar los actos que el legislador de 1889 consideraba más trascendentes y eventualmente más peligrosos para el patrimonio del emancipado, como son los de tomar dinero a préstamo y gravar o vender bienes inmuebles. Puig Brutau, *op. cit.*, pág. 346.

---

[1] El Art. 317 del Código Civil español es el equivalente al Art. 237 nuestro, 31 L.P.R.A. sec. 915.

En igual sintonía, Manresa:(2)

Si la emancipación habilita al menor para regir su persona y bienes como si fuera mayor, según dice el artículo, es indudable que el menor emancipado poseerá en su persona todas aquellas facultades inherentes al natural concepto que entraña la atribución de administrar sus bienes con independencia de terceras personas. De modo que podrá arrendar, cobrar rentas, dar recibos y ejecutar todo aquello que signifique *actos de administración*, sin que, como resultado de tales actos, pueda invocar otros beneficios que las restituciones otorgadas de modo general en el derecho a los mayores de edad. Podrá asimismo, puesto que no está comprendido en las limitaciones de la ley, vender y comprar muebles, créditos o efectos públicos, dar dinero a préstamo, verificar pignoraciones y donar o permutar bienes de aquella clase. Y aun cuando a algún comentarista le ha parecido extraordinario que el menor emancipado tenga facultades tan amplias de dominio sobre sus bienes muebles, especialmente en aquellos que, como los valores públicos, pueden representar una respetable forma de riqueza, es lo cierto que, ante el texto de la ley, no hay términos hábiles de discusión alguna. J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 7ma ed., Madrid, Ed. Reus, 1957, T. II, págs. 764–765.

En su documentada comparecencia, el Procurador General se allana a esta interpretación y reconoce que "mediante [ucase] judicial no se le pueden añadir limitaciones a una disposición legal". Escrito para mostrar causa, pág. 5.

Por los fundamentos expuestos, *se expedirá el auto y se dictará sentencia revocatoria.*.

---

(2) Con la reforma de 1981 en el Derecho español, el anterior Art. 317 del Código Civil español es el Art. 237 de nuestro Código Civil, *supra*. Éste, de igual forma, equipara al menor emancipado al mayor de edad en orden a la capacidad de obrar. Aunque el legislador de 1981 ha ampliado los supuestos en que se exige el complemento de capacidad para que el menor emancipado pueda realizar determinados actos, ninguno tiene que ver con la administración de los bienes muebles. Véase M. Amorós Guardiola, *Comentarios a las reformas del derecho de familia*, Madrid, Ed. Tecnos, 1984, Vol. II, págs. 1.247–1.253.

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton concurren con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.