IRAIDA y SANTA MARTÍNEZ, ETC., demandantes, *v.* ALBERTO RAMÍREZ TIÓ, ETC., demandado; ANGIE ARLENE MARTINEZ BURGOS, peticionaria.

*Número:* CE-92-508          *Resuelto:* 3 de mayo de 1993

*Raúl Ramos Torres*, abogado de la menor peticionaria; *Reina Colón de Rodríguez, Subprocuradora General*, y *Laura G. Ydrach Vivoni, Procuradora General Auxiliar.*

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Nos toca resolver un asunto que no había sido considerado directamente por este Foro antes: ¿Cuándo puede un tribunal declarar nula e inexistente la emancipación de un menor efectuada por concesión de los padres?

## I

El 21 de abril de 1977 la menor Angie Arlene Martínez Burgos fue compensada mediante sentencia por los daños sufridos por la muerte de su padre, recibiendo la suma de dieciocho mil dólares ($18,000) que fueron consignados en el tribunal de instancia. Desde esa fecha hasta 1989, la menor, por conducto de su madre y con la debida autorización judicial, retiró fondos anualmente por un total de ocho mil cuatrocientos diez dólares ($8,410). Posterior al 1989, la menor se fue a Estados Unidos a vivir con su abuela por algún tiempo.

El 11 de febrero de 1992, de vuelta ya en Puerto Rico, la menor, quien ya tenía más de dieciocho (18) años, fue emancipada por su madre Ada Iris Burgos mediante escritura otorgada ante notario, debidamente registrada. Diez (10) días más tarde, el 21 de febrero de 1992, la menor emancipada, representada por su abogado, presentó ante el tribunal a quo una solicitud de retiro de todo el remanente más los intereses de los fondos que tenía consigna-

dos en el tribunal, ascendentes a un total de diecinueve mil cuatrocientos setenta y dos dólares ($19,472). La solicitud aludida fue firmada tanto por la menor como por su madre, conforme a lo dispuesto por el Art. 237 del Código Civil, 31 L.P.R.A. sec. 915.

El tribunal de instancia refirió la solicitud al Procurador Especial de Relaciones de Familia, solicitando su intervención, a pesar de que en *Miranda v. Mun. de Barceloneta*, 122 D.P.R. 619 (1988), claramente establecimos que un menor emancipado puede retirar del tribunal los fondos que tenga consignados allí por concepto de sentencia judicial *sin tener que justificar la utilidad o conveniencia del retiro y sin que apliquen las disposiciones del Código de Enjuiciamiento Civil sobre la autorización judicial para actos referentes a los bienes de menores.*

El 31 de marzo de 1992 se celebró una vista judicial relativa a la solicitud de la menor emancipada, a petición del Procurador Especial de Relaciones de Familia. Allí la menor testificó que fue ella quien promovió la emancipación, luego de que su madre le hablara sobre dicho procedimiento, a fin de poder retirar los dineros consignados a su nombre, los que necesitaba para sus estudios universitarios y su subsistencia. La menor se había graduado de escuela superior con calificaciones sobresalientes.

Mediante Resolución de 23 de junio de 1992, el tribunal de instancia denegó el retiro de los fondos solicitado por la menor emancipada. Distinguió el caso del de *Miranda v. Mun. de Barceloneta*, supra, aduciendo que en éste lo que se cuestionó fue el retiro de los fondos, mientras que en el que nos ocupa el asunto era "la validez de la emancipación como tal ...". Apéndice II, pág. 11. Dicho foro determinó entonces que la emancipación era nula e inexistente "por adolecer de causa lícita, ser contraria al uso y orden público, ser contraria a la buena fe, y en fraude al Tribunal". Íd. Razonó el tribunal que la emancipación había sido hecha para "evadir el tener que recurrir ante el Tribunal con

el rigor de una autorización judicial sobre retiro de fondos" (íd.), y concluyó señalando que "[r]epudiamos la práctica de emancipar menores con el objetivo de evitar y evadir la intervención judicial en este tipo de asuntos" (íd., págs. 11–12).

La joven Angie Martínez acudió en *certiorari* ante nos impugnando la referida resolución, y el 23 de octubre de 1992 le dimos un término a la Procuradora General para mostrar causa por la cual no debíamos expedir el recurso solicitado y revocar la aludida resolución del Tribunal Superior, Sala de Mayagüez. La Procuradora General compareció brevemente y aceptó que, en su criterio, no procedía que se hubiera referido la solicitud de la menor emancipada al Procurador Especial de Relaciones de Familia "ni que se inquiriera sobre los motivos y razones que dieron base a la referida Emancipación debidamente inscrita". Escrito en cumplimiento de orden, pág. 3. Pasamos a resolver.

## II

La emancipación es la institución jurídica mediante la cual se libera a un hijo de la patria potestad de sus padres, y se amplía extraordinariamente su capacidad de obrar, adquiriendo la persona un estado intermedio entre la incapacidad del menor de edad y la plena capacidad del mayor de edad. L. Muñoz Morales, *Reseña histórica y anotaciones al Código Civil de Puerto Rico*, Río Piedras, Ed. U.P.R., 1947, Libro Primero, págs. 657–662; J. Castán Tobeñas, *Derecho Civil Español*, 13ra ed., Madrid, Ed. Reus, 1982, T. 3, Vol. II, pág. 183; J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 7ma ed. rev., Madrid, Ed. Reus, 1957, T. II, págs. 741–743; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Eds. Pirámide, 1976, Vol. V, pág. 466; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1970, T. IV,

Vol. 2, pág. 255. Es un medio, pues, para adelantar la capacidad de obrar, una anticipación de la mayoría de edad, si bien con ciertas limitaciones. D. Espín Cánovas, *Manual de Derecho Civil Español*, 8va ed. rev., Madrid, Ed. Rev. Der. Privado, 1982, Vol. I, pág. 274; M. Albaladejo, *Comentarios al Código Civil*, Madrid, Ed. Edersa, 1978, T. IV, pág. 386.

■ Conocido es que nuestro Código Civil configura cuatro (4) clases de emancipación, siendo una de ellas la que nos ocupa en este caso: la concedida por el padre o la madre que ejerza la patria potestad. Art. 232 del Código Civil, 31 L.P.R.A. sec. 901. Véase, también, *Miranda v. Mun. de Barceloneta*, supra.

La emancipación por concesión del padre o de la madre es un acto *discrecional* por parte del titular de la patria potestad, que no requiere explicación; es decir, donde el efecto procede de la mera expresión de la voluntad del titular, *sin tener que justificar el otorgamiento*. Albaladejo, *op. cit.*, pág. 393; Manresa, *op. cit.*, págs. 744–760; C.E. Mascareñas, *La emancipación en el Derecho puertorriqueño*, 7 (Núm.8) Rev. Der. Pur. 45, 48 (1963); Puig Peña, *op. cit.*, págs. 465–466. Aunque esta modalidad de la emancipación necesita como requisito para su eficacia el consentimiento o la anuencia del menor, no se trata de un contrato sino de un negocio jurídico *unilateral*, del tipo familiar. F. De Castro y Bravo, *Derecho Civil de España*, Madrid, Inst. Estudios Políticos, 1952, T. II, págs. 207–214; E. Menéndez, *Lecciones de Derecho de Familia*, España, Ed. Universitaria, 1976, pág. 102; Mascareñas, *supra*, págs. 47–48.

■ La doctrina civilista es unánime en cuanto a los requisitos de validez de la emancipación por concesión del padre o de la madre. Los requisitos en cuestión son cuatro (4), y solamente cuatro (4), a saber:

(1) que la otorgue quien tenga la patria potestad;

(2) que el menor tenga dieciocho (18) años cumplidos;

(3) que el menor consienta, y

(4) que la concurrencia de las dos (2) declaraciones de voluntad conste ante notario público. Véanse: Albaladejo, *op. cit.*, pág. 394; Puig Peña, *op. cit.*, pág. 468; Q.M. Scaevola, *Código Civil*, Madrid, Imprenta de Ricardo Rojas, 1893, T.V, pág. 582; Manresa, *op. cit.*, págs. 757–758; Espín Cánovas, *op. cit.*, pág. 276; Puig Brutau, *op. cit.*, págs. 260–261; Muñoz Morales, *op. cit.*, págs. 265–268; Mascareñas, *supra*, págs. 48–51. Véase, también, *Vda. de Ruiz v. Registrador*, 93 D.P.R. 914 (1967).

La emancipación por concesión del padre o de la madre que no cumpla con estos cuatro (4) requisitos carece de validez y es anulable. Si cumple con ellos, la emancipación es enteramente válida y no puede ser anulada judicialmente por razón alguna.

■ Para que tenga efecto contra terceros, también se requiere que la emancipación aludida deba anotarse en el Registro Demográfico. *Travieso v. McCormick*, 54 D.P.R. 328 (1939); *Córdova v. Registrador*, 55 D.P.R. 739 (1939); Art. 233 del Código Civil, 31 L.P.R.A. sec. 911.

### III

■ A la luz de los esenciales principios antes señalados, es evidente que el tribunal de instancia erró al decretar la nulidad de la emancipación de Angie Arlene Martínez Burgos. Esa emancipación cumplía cabalmente con los cuatro (4) requisitos aludidos antes, que determinan su validez. Aún si hubiese sido indudablemente cierto que el único *motivo* de la madre con patria potestad para emancipar a su hija, y el de ésta al consentir, fue evitar acudir al tribunal cada vez que necesitaban retirar fondos, ello no le daba autoridad al tribunal para invalidar la emancipación. Hemos reconocido que el interés del menor está revestido en nuestra jurisdicción del más alto interés público y que los tribunales, en protección de ese interés y en el ejercicio

del poder de *parens patriae*, tienen amplias facultades y discreción. *Ortiz v. Vega*, 107 D.P.R. 831 (1978); *Sterzinger v. Ramírez*, 116 D.P.R. 762 (1985). Pero esas facultades no son absolutas, *Fernández v. Martínez*, 59 D.P.R. 548 (1941), y ciertamente no llegan al extremo de permitirle a un tribunal obviar el claro mandato de la ley y de la doctrina, como sería en este caso la acción de anular una emancipación enteramente válida.

Nótese que uno de los efectos indiscutibles de la emancipación es precisamente el de dotar al emancipado de la facultad de administrar sus bienes con independencia de terceras personas. Manresa, *op. cit.*, págs. 764–765. En *Miranda v. Mun. de Barceloneta*, supra, interpretamos que esta facultad incluye la de poder "retirar sin limitación alguna los fondos consignados en el tribunal". En vista de esto, es un contrasentido considerar que una emancipación es nula porque se hace con el propósito de lograr libremente el retiro de fondos consignados en un tribunal. No tiene lógica jurídica alguna decidir que es ilegal un acto jurídico porque se realiza para lograr precisamente uno de los efectos u objetivos de ese acto. Más aún, la determinación del tribunal de instancia tiende a soslayar y a dejar sin efecto práctico nuestra decisión en *Miranda v. Mun. de Barceloneta*, supra, cosa que claramente rebasa la autoridad del tribunal de instancia. Da la impresión de que dicho foro trató de circunvenir lo que allí determinamos.

Por las razones antes expuestas, *resolvemos que la decisión del tribunal de instancia en el caso de marras fue claramente "ultra vires", por lo cual se dictará sentencia revocándola, y se ordenará la entrega inmediata de los fondos consignados.*

El Juez Asociado Señor Hernández Denton concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disintió mediante opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

La opinión que emite una mayoría de los integrantes del Tribunal en el presente caso nos hace recordar el término "camisa de fuerza"; término que pensábamos era únicamente aplicable en el campo de la siquiatría. La norma hoy implantada por el Tribunal no sólo hace añicos el poder de *parens patriae* que tiene el Estado en casos de menores de edad, ejercitado el mismo a través de los tribunales, sino que socava la facultad discrecional que tradicionalmente le hemos reconocido a los jueces en esta clase de situaciones; ello en loable protección de los intereses de los menores.

El Tribunal, *con la extraña cooperación de la Oficina del Procurador General de Puerto Rico*,(1) establece "un sistema automático", o *prima facie*, de cotejo de los requisitos exigidos en este tipo de situación; sistema que tendrá el perjudicial efecto de inhibir a los jueces de instancia de ejercer su facultad discrecional en protección de los intereses de los menores.

En fin, la norma jurisprudencial hoy implantada por el Tribunal es una que erróneamente restringe, o reduce al mínimo, la función judicial en casos de esta índole; casos que están revestidos del más alto interés público.

---

(1) Resulta, cuando menos, sorprendente la posición que respecto al presente caso ha asumido la oficina del Procurador General de Puerto Rico, según la misma se reseña en la·opinión mayoritaria.