ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| CORAL L. RIVERA MORELL<br><br>Apelados<br><br>v.<br><br>SCHUYLER MATTHEW WHELAN<br><br>Apelantes | KLAN202400229 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2023RF00511<br><br>Sobre: DIVORCIO RUPTURA IRREPARABLE; CUSTODIA; PATRIA POTESTAD Y ALIMENTOS |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de abril de 2024.

Nuestra jurisprudencia ha sido consistente en sostener que en nuestra jurisdicción el interés del menor está revestido del más alto interés público y que los tribunales, en protección de ese interés y en el ejercicio del poder de *parens patriae*, tienen amplias facultades y discreción. *Martínez v. Ramírez Tió*, 133 DPR 219 (1993).

Comparece ante *nos,* Coral L. Rivera Morell (apelante) y nos solicita que revisemos la *Sentencia* emitida y notificada el 3 de octubre de 2023, por el Tribunal de Primera Instancia (TPI), Sala Superior de Arecibo. Mediante dicho dictamen, el TPI desestimó la *Demanda* por falta de jurisdicción.

Por los fundamentos que expondremos a continuación, *revocamos* la *Sentencia* apelada.

**I.**

Surge del expediente ante *nos* que, la parte apelante contrajo matrimonio con Schuyler Matthew Whelan (apelado) el 13 de marzo de 2021. El 29 de julio de 2021, las partes presentaron dos (2) demandas de divorcio en el estado de Georgia; consecuentemente, ambos casos fueron consolidados bajo el número 21-CV-086. Posteriormente, el 27 de agosto de 2021, el apelado fue acusado por

violencia familiar, por lo cual se autorizó a la apelante a viajar a Puerto Rico con los menores desde el 28 de agosto hasta el 3 de octubre de 2021.

Así las cosas, el 4 de octubre de 2021, el Tribunal de Georgia en el caso 21-CV-088, relacionado con el asunto de la violencia familiar, emitió un *Order for Continuance Of Ex Parte Order* mediante la cual determinó que:

A. The Petitioner shall be allowed to travel to Puerto Rico with the minor children of the parties from August 28, 2021, until October 3, 2021. It is understood the children will be returned to the State of Georgia when Fall Break concludes.
B. The Respondent may occupy the marital residence located at 1354 Lower Hartley Bridge Road, Byron, Georgia 31008 during the time the Petitioner and minor children are away from the State of Georgia.
C. The Respondent shall execute a release of his counseling records to Dr. Omar F. Taveras in order for said records to be reviewed by the Court.
D. The Respondent shall request that Dr. Taveras prepare a written "threat assessment" as to his ability to have unsupervised parenting time with the minor children of the parties.
E. The Respondent shall be allowed two (2) audio only calls with the minor children of the parties during the following month/ said calls shall be up to one (1) hour in lenght.

Entretanto, en el caso 21-CV-086 el Tribunal de Georgia estableció una pensión alimentaria provisional de $1,087.50 mensual efectiva al 1 de diciembre de 2021. Además, se establecieron relaciones paterno filiales supervisadas por ser el apelado un adicto al sexo. El 22 de noviembre de 2021, el Tribunal de Georgia emitió un *Order* mediante la cual concedió la custodia de los menores a la parte apelante. Asimismo, le concedió el derecho a mudarse a Camuy, Puerto Rico. En diciembre de 2021, el apelado se trasladó al estado de Virginia.

El 25 de mayo de 2022, el Tribunal de Georgia emitió un *Modified Temporary Consent Order of Custody* mediante la cual realizó las siguientes determinaciones:

The Court further finds that the Father is still vulnerable to his impulsive behavior and decisión making and thus remains a threat to the safety of the children, as evidence though his testimony on the witness stand regarding his recent sexual contact with Amanda during pone calls despite being in recovery for his sexual addiction, his failure to follow

the Order of the Court in continuing to communicate with the Mother, and his continuedd issues with authority. The Court finds that the father's visitation shall remain supervised.

The Defendant/Mother shall continue to have sole legal and physical custody of the parties; two children, to-wit: Claudia M. Whelan Rivera and Edward J. Whelan Rivera.

The Defendant shall continue to have right to move to and reside at Edificio Vista Mar, barrio Membrillo Sector Bajura, Carr. 119 km 2.3 Apt. 2A, Camuy PR 00627 with both minor children as of November 29, 2021.

El 3 de noviembre de 2022, el Tribunal de Georgia emitió un *Order Denying Defendant's Motion to Transfer Jurisdiction,* mediante la cual denegó el traslado del caso a Puerto Rico. Posteriormente, el 7 de junio de 2023, la parte apelante presentó la *Demanda* de epígrafe sobre divorcio, custodia, patria potestad y alimentos, en contra de la parte apelada. Subsiguientemente, el 15 de junio de 2023, el Tribunal Municipal de Arecibo emitió una *Orden de Protección Ex Parte* a favor de los menores CMWR y EJWR por un evento de actos lascivos presuntamente perpetrado por el apelado.

Así, el 25 de junio de 2023, la parte apelada presentó una *Moción Asumiendo Representación Legal y Solicitando Desestimación por Falta de Jurisdicción.* Oportunamente, el 27 de junio de 2023, la parte apelante presentó una *Oposición a Moción Solicitando Desestimación.* El 10 de julio de 2023, el TPI emitió una *Orden* mediante la cual le ordenó a la parte apelante a que se expresara detalladamente sobre cada alegación contenida en la *Moción Asumiendo Representación Legal y Solicitando Desestimación por Falta de Jurisdicción.* Acto seguido, el 17 de julio de 2023, la parte apelante presentó una segunda *Oposición a Moción Solicitando Desestimación.*

El 11 de agosto de 2023, la parte apelada presentó una *Réplica a Oposición a Moción Solicitando Desestimación por Falta de Jurisdicción.* El 5 de septiembre de 2023, el Tribunal Municipal de Arecibo extendió la *Orden de Protección* a favor de los menores hasta el 13 de octubre de 2023. El 21 de septiembre de 2023, la parte apelante presentó ante el TPI un *Escrito en Cumplimiento de Orden*

*y Dúplica a Réplica a Oposición a Moción Solicitando Desestimación por Falta de Jurisdicción.*

Luego, 26 de septiembre de 2023, la parte apelante presentó una *Moción de Emergencia [...].* Así, el 27 de septiembre de 2023, el Tribunal de Georgia emitió un *Order.* En esta, disolvió el vínculo matrimonial existente entre las partes. Asimismo, concedió la custodia de los menores exclusivamente a la parte apelada y dejó sin efecto la *Orden de Protección* emitida por el Tribunal Municipal de Arecibo.

El 3 de octubre de 2023, el TPI emitió una *Sentencia* mediante la cual desestimó sin perjuicio la *Demanda* de autos. En vista de ello, el 5 de octubre de 2023, la parte apelante presentó un *Escrito Urgente en Solicitud de Determinaciones Adicionales y Solicitud de Reconsideración.* Asimismo, el 6 de octubre de 2023, la parte apelante presentó una *Moción Sometiendo Documento Suplementando Solicitud de Determinaciones Adicionales y Solicitud de Reconsideración.* El 26 de enero de 2024, el Tribunal Municipal de Aguadilla hizo una determinación de causa para arresto por una *Denuncia* en contra de la parte apelada bajo el Artículo 133 A del Código Penal y luego de los trámites de rigor, se le impuso al apelado una fianza de $150,000.00. Esto, relacionado con los hechos por los cuales se emitió la *Orden de Protección* a favor de los menores.

Así pues, el 22 de febrero de 2024, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* el *Escrito Urgente en Solicitud de Determinaciones Adicionales y Solicitud de Reconsideración.* Insatisfecha con esa determinación, el 7 de marzo de 2024, la parte apelante acudió ante *nos* mediante un recurso de apelación y señaló la comisión de los siguientes errores:

1. **Erró el TPI al no asumir jurisdicción ya que ninguna de las partes reside en el Estado de Georgia y según la Ley de Georgia para tener jurisdicción una de las partes tiene que residir en el estado, o los hijos o tener un inmueble.**

**2. Erró el TPI al no asumir jurisdicción de los menores a pesar de estos residir en Puerto Rico por más de 2 años sin interrupciones.**

**3. Erró el TPI al no velar por el bienestar de los menores, asumiendo la jurisdicción de estos a pesar de conocer que existía una investigación criminal y una denuncia radicada en contra del apelado.**

Examinado el recurso de apelación, el 14 marzo de 2024, este Tribunal emitió una *Resolución* concediéndole un término de veinte (20) días a la parte apelada para que presentara su posición al recurso. El 26 de marzo de 2024, la parte apelante presentó una *Moción Informativa.* En la misma, informó a este Tribunal que la *Orden de Protección* a favor de los menores fue extendida hasta el 25 de marzo de 2025.

El 1 de abril de 2024, la parte apelada compareció mediante un *Escrito en Cumplimiento de Orden.* Subsiguientemente, el 8 de abril de 2024, la parte apelante presentó una *Réplica a Escrito en Cumplimiento de Orden.* Asimismo, el 12 de abril de 2024, la parte apelante presentó una segunda *Moción Informativa* mediante la cual informó que el 5 de abril de 2024, el Tribunal de Georgia emitió un *Contempt Order and Rule Absolute* por no haber entregado a los menores a la parte apelada. El 15 de abril de 2024, la parte apelada presentó una *Moción Informando Incumplimiento con la Regla 68 y 71 del Reglamento del Tribunal de Apelaciones.*

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. La jurisdicción**

Como es sabido, "[la] jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias". *RB Power, Inc. v. Junta de Subastas de la ASG PR,* 2024 TSPR 24, 213 DPR ___ (2024). Véase, además, *Pueblo v. Torres Medina,* 211 DPR 950 (2023); *Cobra Acquisitions, LLC. v. Mun. de Yabucoa,* 210 DPR

384 (2022). Así, para adjudicar un caso el tribunal debe tener tanto jurisdicción sobre la materia como sobre las partes litigiosas. *Cobra Acquisitions, LLC. v. Mun. de Yabucoa, supra*, pág. 394. Por consiguiente, el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo es el aspecto jurisdiccional. *RB Power, Inc. v. Junta de Subastas de la ASG PR, supra*; *Torres Alvarado v. Maderas Atiles*, 202 DPR 495 (2019).

En ese sentido, el Tribunal Supremo de Puerto Rico ha enfatizado consistentemente que la falta de jurisdicción "trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*". *MCS Advantage, Inc. v. Fossas Blanco y otros*, 211 DPR 135 (2023). Véase, además, *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 372 (2018); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).

Además, sabido es que ante la situación en la que un tribunal carece de autoridad para atender un recurso, solamente procede decretar la desestimación del caso ante su consideración. *Lozada Sánchez et al. v. JCA*, 184 DPR 898, 909 (2011). Las cuestiones de jurisdicción por ser privilegiadas deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 222 (2007). Véase, además, *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 355 (2003); *Autoridad Sobre Hogares v. Sagastivelza*, 71 DPR 436, 439 (1950). Al hacer esta determinación,

debe desestimarse la reclamación sin entrar en los méritos de la controversia. *MCS Advantage, Inc. v. Fossas Blanco y otros, supra*; *González Santos v. Bourns P.R., Inc.*, 125 DPR 48, 63 (1989). En consecuencia, la ausencia de jurisdicción es insubsanable. *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 683 (2011); *Vázquez v. A.R.P.E.*, 128 DPR 513, 537 (1991).

Por lo tanto, un tribunal que carece de jurisdicción únicamente tiene jurisdicción para así declararlo y desestimar el caso. *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 264 (2018). Véase, además, *Moreno González v. Coop. Ahorro Añasco,* 177 DPR 854, 859-860 (2010); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). A tenor con lo anterior, les corresponde a los tribunales ser los guardianes de su jurisdicción, independientemente de que la cuestión haya sido planteada anteriormente o no. *Dávila Pollock et al. v. R.F. Mortgage and Investment Corp.*, 182 DPR 86, 97 (2011). Véase, además, *Moreno González v. Coop. Ahorro Añasco, supra*, pág. 859; *S.L.G. Szendrey-Ramos v. F. Castillo, supra.*

## B. *Parental Kidnapping Protection Act*

El *Parental Kidnapping Prevention Act* (PKPA), 28 USCA sec. 1738 A (a), es un estatuto federal que procura facilitar la ejecución de los decretos judiciales estatales relacionados a custodia y derechos de visita, así como prevenir la competencia y el conflicto interjurisdiccional. *Colón Vega v. Díaz Lebrón*, 211 DPR 548 (2023). Véase, además, *Cancel Rivera v. González Ruiz*, 200 DPR 319 (2018). Consecuentemente, los tribunales de los estados están obligados a dar entera fe y crédito a los dictámenes de custodia que emiten sus equivalentes. *Colón Vega v. Díaz Lebrón, supra.* Así pues, como regla general no pueden modificar un dictamen de custodia que emitió otro estado de forma compatible con la ley. Íd. Véase, además, *Collazo Dragoni v. Noceda González*, 198 DPR 476 (2017); 28 U.S.C. sec. 1738A (a).

En cambio, el inciso (b) del PKPA define *estado de residencia* como el estado donde el menor ha residido por seis (6) meses consecutivos antes de la fecha en que comenzaron los procedimientos de custodia. *Collazo Dragoni v. Noceda González, supra.* Véase, además, 28 U.S.C. sec. 1738A (b) (8). Asimismo, nuestro máximo Foro ha establecido que, para determinar si un dictamen de custodia emitido es consistente con la ley, de modo que aplique la prohibición del inciso (a), el inciso (c) establece que se examinará: (1) si el tribunal que lo emitió tenía jurisdicción bajo las leyes de su estado, y (2) si se cumplieron con una de varias bases jurisdiccionales. *Collazo Dragoni v. Noceda González, supra.* Véase, además, 28 U.S.C. sec. 1738A (c). Estas bases jurisdiccionales, que tienen un orden preferencial, son: (A) jurisdicción del estado de residencia del menor; (B) jurisdicción por contactos significativos con el foro; (C) jurisdicción para situaciones en las que el menor fue abandonado o se encuentra en estado de emergencia; (D) jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, o (E) jurisdicción continua. Íd.

Por otra parte, el inciso (d) del PKPA establece que el estado que haya emitido el decreto original de custodia conserva jurisdicción continua sobre el asunto para hacer valer y revisar su determinación original. 28 U.S.C. sec. 1738A (d). Véase, además, *Collazo Dragoni v. Noceda González, supra.* Para conservar la jurisdicción se deben cumplir los siguientes requisitos: (1) que el decreto original de custodia sea compatible con las disposiciones del PKPA; (2) que el foro original mantenga jurisdicción bajo sus propias leyes, y (3) que dicho foro continúe siendo el estado de residencia del menor o al menos de una de las partes. Íd. Una vez establecida la jurisdicción continua, la misma prevalece sobre cualquier otra base jurisdiccional. Íd.

Mientras, el inciso (e) establece otro requisito para la validez de los decretos de custodia: notificación adecuada a los padres y oportunidad de ser oídos previo a la determinación. 28 U.S.C. sec. 1738A (e). Así, como excepción al inciso (d), el inciso (f) reconoce a los tribunales la autoridad para modificar una determinación de custodia emitida originalmente por otro estado, si: (1) el estado que pretende modificar el decreto ostenta jurisdicción, y (2) el foro original perdió su jurisdicción para modificar el decreto o renunció a ella. 28 U.S.C. sec. 1738A (f). Además, el inciso (g) previene los conflictos interjurisdiccionales al prohibirle a los tribunales ejercer jurisdicción si otro tribunal ejerció jurisdicción conforme a la ley. *Collazo Dragoni v. Noceda González, supra.* Véase, además, 28 U.S.C. sec. 1738A (g). Por último, el inciso (h) prohíbe modificar el decreto inicial a menos que el tribunal inicial haya perdido o renunciado su jurisdicción. 28 U.S.C. sec. 1738A (h).

De otro lado, nuestro ordenamiento jurídico establece que los tribunales de Puerto Rico poseen jurisdicción para atender los casos de custodia en cualquiera de las siguientes situaciones: (1) cuando se posee jurisdicción *in personam* sobre todos los litigantes o aun sobre una sola de las partes; (2) cuando el menor está domiciliado en Puerto Rico; (3) cuando el menor está físicamente presente o tiene su residencia habitual en Puerto Rico; y, (4) cuando el menor es ciudadano o nacional de Puerto Rico. *Collazo Dragoni v. Noceda González, supra*, citando a *Marrero Reyes v. García Ramírez*, 105 DPR 90 (1976). Así pues, a pesar de que una sentencia de custodia es válida si se cumplen los requisitos jurisdiccionales, el PKPA impone una preferencia por el estado de residencia del menor para que la sentencia goce de entera fe y crédito en los demás estados. *Ortega v. Morales*, 131 DPR 783 (1992).

### C. *Uniform Child Custody Jurisdiction Act*

En 1973, con anterioridad al PKPA, el estado de California adoptó el *Uniform Child Custody Jurisdiction Act* (UCCJA), 12B West's Ann. California Civil Code Sec. 5150, una legislación que tiene el propósito de establecer normas uniformes que le permitan al estado determinar si tiene jurisdicción sobre la materia en los casos de custodia. *Ortega v. Morales Ortega,* 131 DPR 783 (1992). Esta ley, también, impone la obligación al estado de reconocer y darle validez a los decretos de otros estados. Íd. Así pues, el UCCJA se aprobó para evitar los decretos de custodia conflictivos. No obstante, el problema que se quiso evitar con la aprobación de la Ley continuó, ya que algunos estados no adoptaron el UCCJA y otros aprobaron sus propias versiones del mismo. *Ortega v. Morales Ortega, supra.*

Así pues, el Congreso de los Estados Unidos reconoció la necesidad de fijar normas uniformes para regir los casos de custodia. De esta forma, se evitaba que el padre no custodio sacara al niño de la jurisdicción del estado donde se había determinado la custodia e instara una acción en otro estado buscando prevalecer con un nuevo decreto de custodia. *Ortega v. Morales Ortega, supra.* Así surgió el PKPA.

**III.**

En esta ocasión, procede que determinemos si erró el TPI al no asumir jurisdicción, ya que ninguna de las partes reside en el estado de Georgia y según la Ley de Georgia para tener jurisdicción una de las partes tiene que residir en el estado, o los hijos o tener un inmueble. Además, debemos auscultar si incidió el TPI al no asumir jurisdicción de los menores a pesar de que estos residen en Puerto Rico por más de dos (2) años sin interrupciones. Asimismo, debemos determinar si erró el TPI al no velar por el bienestar de los menores, asumiendo jurisdicción de estos a pesar de conocer que

existía una investigación criminal y una determinación de causa para arresto por una denuncia por actos lascivos presentada en contra del apelado. Por estar estrechamente relacionados discutiremos los tres (3) señalamientos de error de forma conjunta.

A simple vista el tracto procesal del caso de autos revela patentemente lo que pudiera ser un conflicto interjurisdiccional. La parte apelante solicita que el Tribunal local asuma jurisdicción, ya que ninguna de las partes ni los menores son residentes del estado de Georgia. Según el derecho que antecede, la norma es que, si el Tribunal de Georgia emitió el decreto de custodia de forma cónsona con el PKPA, los tribunales de Puerto Rico no pueden alterarlo. Véase, inciso (a) del PKPA, 28 U.S.C. sec. 1738A (a).

Un análisis cuidadoso de la legislación federal PKPA y la jurisprudencia interpretativa, así como las particularidades del caso, nos lleva a concluir que procede revocar el pronunciamiento impugnado. *Véamos.*

Es un hecho que, el foro de Georgia ejerció jurisdicción sobre la materia de divorcio y custodia y emitió el 22 de noviembre de 2021, un *Order* mediante la cual concedió la custodia de los menores a la parte apelante. Además, le concedió el derecho a mudarse a Camuy, Puerto Rico. Posteriormente, en diciembre de 2021, el apelado se trasladó al estado de Virginia. El 25 de mayo de 2022, el Tribunal de Georgia emitió un *Modified Temporary Consent Order of Custody* mediante la cual, entre otras cosas, le permitió a la apelante continuar con la custodia exclusiva de los menores.

Así las cosas, el 3 de noviembre de 2022, el Tribunal de Georgia emitió un *Order Denying Defendant's Motion to Transfer Jurisdiction,* mediante la cual denegó el traslado del caso a Puerto Rico. Acto seguido, la apelante presentó el pleito de epígrafe; además, se concedió la *Orden de Protección* a favor de los menores. Sin embargo, a pesar de que el Tribunal de Georgia tenía

conocimiento de la *Orden de Protección* a favor de los menores, hizo caso omiso a esta y no le otorgó entera fe y crédito. Consecuentemente, el 26 de septiembre de 2023, el Tribunal de Georgia emitió un *Order* mediante la cual disolvió el vínculo matrimonial existente entre las partes, concedió la custodia de los menores exclusivamente a la parte apelada y unilateralmente dejó sin efecto la *Orden de Protección* emitida por el Tribunal Municipal de Arecibo.

Así, como norma general, el Tribunal de Georgia es quien ostenta jurisdicción continua al palio de la subsección (d) del PKPA, *supra*. Por lo tanto, a tenor con esto, estamos obligados a dar entera fe y crédito al dictamen de custodia que este foro emitió. *Colón Vega v. Díaz Lebrón, supra*. Sin embargo, debemos analizar si el dictamen de custodia fue emitido de forma compatible con la ley.

La Ley de Georgia establece que: "[e]xcept as otherwise provided in Code Section 19-9-64, a court of this state has jurisdiction to make an initial child custody determination only if: This state is the home state of the child on the date of the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state". O.C.G.A. Section 19-9-61 (a) (1). Por lo tanto, a nuestro entender el estado de Georgia no tenía jurisdicción para emitir el decreto de custodia, pues ninguna de las partes se encuentra en Georgia ni tienen contactos significativos con dicho Estado.

Además, a tenor con nuestra jurisprudencia, el TPI debía determinar si el dictamen de custodia emitido fue consistente con la ley, de modo que aplique la prohibición del inciso (a) del PKPA. A esos efectos, había que examinar: (1) si el tribunal que lo emitió tenía jurisdicción bajo las leyes de su estado, y (2) si se cumplieron con una de varias bases jurisdiccionales. *Collazo Dragoni v. Noceda González, supra*. Véase, además, 28 U.S.C. sec. 1738A (c). Estas

bases jurisdiccionales, que tienen un orden preferencial, son: (A) jurisdicción del estado de residencia del menor; (B) jurisdicción por contactos significativos con el foro; (C) jurisdicción para situaciones en las que el menor fue abandonado o se encuentra en estado de emergencia; (D) jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, o (E) jurisdicción continua. Íd.

Por otro lado, el inciso (d) del PKPA establece que el estado que haya emitido el decreto original de custodia conserva jurisdicción continua sobre el asunto para hacer valer y revisar su determinación original. 28 U.S.C. sec. 1738A (d). No obstante, lo anterior, **para conservar la jurisdicción se deben cumplir los siguientes requisitos: (1) que el decreto original de custodia sea compatible con las disposiciones del PKPA; (2) que el foro original mantenga jurisdicción bajo sus propias leyes, y (3) que dicho foro continúe siendo el estado de residencia del menor o al menos de una de las partes**. (Énfasis nuestro). Íd. En el caso ante *nos*, el estado de Georgia no albergaba jurisdicción bajo sus propias leyes y tampoco era el estado de residencia de los menores, ni de ninguna de las partes.

Así, como excepción al inciso (d), **el inciso (f) reconoce a los tribunales la autoridad para modificar una determinación de custodia emitida originalmente por otro estado, si: (1) el estado que pretende modificar el decreto ostenta jurisdicción, y (2) el foro original perdió su jurisdicción para modificar el decreto o renunció a ella**. (Énfasis nuestro). 28 U.S.C. sec. 1738A (f). De conformidad con los hechos antes reseñados, el TPI podía modificar el decreto de custodia a tenor con las excepciones establecidas en el PKPA y, además, porque el foro de Georgia había perdido su jurisdicción desde hace más de dos (2) años. Véase, 28 U.S.C. sec. 1738A (h).

Además, no debemos perder de perspectiva que los tribunales de Puerto Rico poseen jurisdicción para atender los casos de custodia en cualquiera de las siguientes situaciones: (1) cuando se posee jurisdicción *in personam* sobre todos los litigantes o aun sobre una sola de las partes; (2) cuando el menor está domiciliado en Puerto Rico; (3) cuando el menor está físicamente presente o tiene su residencia habitual en Puerto Rico; y, (4) cuando el menor es ciudadano o nacional de Puerto Rico. *Collazo Dragoni v. Noceda González, supra.*

Así pues, es nuestro entender que el TPI debió analizar detenidamente las características particulares que exhibe el caso de epígrafe para poder tomar una decisión concienzuda, no ligera, sobre su jurisdicción. En ese contexto, resulta trascendental destacar que existe una *Orden de Protección* válida y vigente por un (1) año a favor de los menores y que, además, existe un caso criminal por una *Denuncia* en contra de la parte apelada cuyas víctimas son los menores. Por lo tanto, al existir una situación de emergencia y tomando en consideración que Georgia perdió jurisdicción, como mínimo el TPI debió asumir jurisdicción para atender los asuntos de custodia y relaciones paternofiliales. Tampoco debemos obviar que el apelado reside en el estado de Virginia, por lo cual dichos menores tampoco irían al estado de Georgia.

Además, el TPI bien pudo comunicarse con el Tribunal de Georgia para manejar el estado de emergencia que en varios escritos la apelante trajo a colación. Pues, uno de los objetivos principales del PKPA es promover la cooperación interestatal.

Estamos conscientes que la cuestión que acarrea el caso de autos es compleja. Una madre que vivió junto al padre de sus hijos y sus dos (2) hijos en el estado de Georgia y escasamente cumplidos cuatro (4) meses de matrimonio, ocurrieron ciertos hechos que la llevaron a vivir en Puerto Rico. Sus hijos quienes tienen 6 y 5 años

viven hace más de dos (2) años en la Isla y tienen contactos significativos con esta jurisdicción. Así pues, la ley federal PKPA es clara, precisa y directa al definir estado de residencia del menor, al establecer la jurisdicción continúa y al promover que un foro extranjero otorgue entera fe y crédito a un dictamen que se ajuste a sus provisiones. Sin embargo, en este caso en particular debemos justipreciar y aplicar sus claras excepciones.

Por último, reiteramos que el derecho se tiene que ajustar a los hechos de cada caso, garantizando el debido proceso de ley de todas las partes y evitando cometer una injusticia. Ello toma mayor relevancia cuando hay menores involucrados. En fin, resolvemos que erró el TPI al desestimar la *Demanda* por falta de jurisdicción.

Por los fundamentos antes expuestos, los que hacemos formar parte del presente dictamen, revocamos la *Sentencia* apelada y devolvemos el caso al Tribunal de Primera Instancia, Sala Superior de Arecibo, para la continuación de los procedimientos de conformidad con lo aquí resuelto y sin tener que esperar por nuestro mandato.

**Notifíquese inmediatamente a todas las partes.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones