ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **CRISTINA MORALES ACEVEDO**<br><br>Peticionario<br><br>v.<br><br>**OUSSIE OSVALDO NIEVES GONZÁLEZ**<br><br>Recurrido | KLCE202401298 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.: **AG2021RF00705**<br><br>Sobre: Divorcio |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de diciembre de 2024.

Comparece ante nos la señora Cristina Morales Acevedo (señora Morales Acevedo o peticionaria) y solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de Aguadilla, el 7 de octubre de 2024. Por virtud del dictamen recurrido, en el contexto de un asunto de relaciones paternofiliales, el foro *a quo* acogió ciertas recomendaciones de la trabajadora social asignada al caso.

Por los fundamentos que expondremos a continuación, denegamos el recurso de *certiorari* solicitado.

## I.

Según surge del expediente, el señor Oussie Osvaldo Nieves González (señor Nieves González o recurrido) y la señora Morales Acevedo se casaron el 28 de julio de 2012. Durante el matrimonio procrearon a SNM, nacida el 3 de febrero de 2017. En una *Sentencia* dictada el 28 de marzo de 2022, el Tribunal decretó roto y disuelto el vínculo matrimonial existente entre las partes. Asimismo, adjudicó la custodia de la menor SNM a la señora Morales Acevedo

y que la patria potestad sería compartida por las partes. No obstante, el Tribunal concedió facultades tutelares a la señora Morales Acevedo para que pudiera tomar decisiones médicas y educativas en relación con su hija SNM, mientras el señor Nieves González residiera fuera de Puerto Rico. A su vez, decretó que las relaciones paternofiliales se llevarían a cabo en Puerto Rico previa coordinación entre las partes.

El 10 de mayo de 2024, el señor Nieves González, quien reside en Kissimmee, Florida, desde el 2020, instó una *Solicitud para Establecimiento de Relaciones Paternofiliales*. Adujo que mantiene comunicación diaria con su hija SNM de forma telefónica y la menor SNM lo ha visitado en el estado de Florida siempre en compañía de la señora Morales Acevedo. No obstante, alegó que requería tiempo adicional con la menor SNM para poder compartir en su residencia y visitarla cuando se encuentre en Puerto Rico, incluyendo navidades y cumpleaños. Además, solicitó que se le diera conocimiento para la toma de las decisiones de patria potestad en asuntos escolares, médicos y emocionales que conciernen sobre la menor SNM. Invitó al tribunal a establecer las relaciones paternofiliales de manera que pudiera compartir con SNM de la forma más amplia posible conforme a derecho, por lo que sugirió el siguiente plan filial:

a. 3 de febrero de cada año, día de cumpleaños de la menor, serán alternados entre cada progenitor.

b. Semana Santa (receso escolar) la menor viajaría a Kissimmee, Florida a visitar a su padre quien reside allí. El padre la recogería personalmente a Puerto Rico.

c. La menor pasará dos semanas en sus vacaciones de verano escolar para que la menor viaje a Kissimmee, Florida.

d. Navidades, Despedida de Año, y Día de Reyes: primer bloque con un progenitor: receso de navidad hasta el 2 de enero; segundo bloque del 2 de enero hasta el comienzo de clases con otro progenitor. Cada año se alternarán.

> e. Cualquier otra fecha fuera del horario establecido, previa coordinación entre las partes. El demandado viajaría a Puerto Rico a relacionarse con la menor. La menor podría pernoctar con el demandado.

La señora Morales Acevedo mostró reparo a los días solicitados por el señor Nieves González, bajo el razonamiento de que la menor SNM no ha tenido una relación estrecha con el señor Nieves González, su padre. Añadió que cuando la menor SNM ha viajado por unos días a verlo en la Florida ha sido acompañada de ésta, lo que la hacía sentir segura. La señora Morales Acevedo opinó que SNM no estaba preparada para irse con el señor Nieves González o relacionarse fuera de Puerto Rico. Conjuntamente, alegó que el señor Nieves González no contaba con redes de apoyo conocidas por la menor SNM, viajaba a trabajar a dos (2) horas de distancia de su hogar y se desconocía su disponibilidad para atender a SNM. Así las cosas, arguyó que no tenía oposición en que las relaciones paternofiliales se llevaran a cabo en Puerto Rico, en un ambiente conocido por la menor SNM, mientras esta crece y merman sus concurridos episodios de asma, al tiempo que se fortalecían los lazos afectivos con el señor Nieves González.

En una *Orden* dictada el 12 de junio de 2024, el TPI refirió el caso a la Unidad Social de Relaciones de Familia para evaluación y recomendación sobre relaciones paternofiliales. Posteriormente, el 4 de septiembre de 2024, se le requirió a la trabajadora social informar el estado del estudio social o solicitar remedio.

El 5 de septiembre de 2024, la trabajadora social asignada al caso, Janice A. Babá Rivera, incoó una ***Moción sobre Estado del Caso y Recomendaciones.*** Los hallazgos de su intervención revelaron que la menor SNM se siente querida por ambas partes, es apegada a la figura materna y no rechaza al señor Nieves González. Igualmente, que ambos adultos exhiben buen manejo de su hija SNM.

En cuanto a lo solicitado por el señor Nieves González, la trabajadora social consideró beneficioso que la menor SNM experimentara un periodo de transición previo a vacacionar junto al señor Nieves González fuera de Puerto Rico. Específicó que dicho periodo de transición debía iniciar de forma inmediata, considerando el diagnóstico de ansiedad generalizada de SNM. En consecuencia, recomendó al foro primario lo siguiente:

- Que la menor inicie periodo de transición de forma inmediata en interés de que pueda relacionarse con papá fuera de Puerto Rico. Cuando papá viaje a la isla, la niña debe permanecer todo el tiempo con él. Que éste la lleve a todas las actividades que realiza.

- Que la menor se relacione con papá todas las veces que éste viaje a Puerto Rico.

- Que las relaciones paterno filiales se lleven a cabo en el hogar de los abuelos paternos ubicada en 1125 Mery Frances Drive en Kissimmee, Florida. Comenzando este año, la menor se relacionará con papá del 29 diciembre al 4 de enero. Durante el verano, las partes acordarán la semana en que la menor viajará a relacionarse con el padre.

- Papá acompañará la menor durante el viaje de Puerto Rico a Florida y mamá lo hará de Florida a Puerto Rico. Que el Tribunal determine quién costeará los pasajes.

- Mientras la menor vacacione con papá, mamá podrá comunicarse con ella diariamente. Papá proveerá los medios para ello. También adquirirá frisa de "Nezuko" solicitada por la menor.

- El día del cumpleaños de la menor, papá compartirá con ella de 10:00 a.m. a 4:00 p.m. años alternos del día caer fin de semana. De ser día de clases lo hará desde la salida de la escuela hasta las 7:00 p.m.

- Que las partes se mantengan informadas de cualquier asunto relacionado a su hija.

- Que las partes coordinen terapia de comunicación entre padres con la Dra. Carelys Peña, sicóloga. Informarán al Tribunal la fecha de inicio de las terapias en un periodo no mayor de 10 días.

A raíz de lo anterior, ese mismo día, el TPI dictó una *Orden*, por medio de la cual concedió 30 días a las partes para que expresaran por qué no debía acoger las recomendaciones de la Unidad Social. Asimismo, advirtió que, de no comparecer en el término ordenado, emitiría resolución conforme a lo recomendado.

Mediante *Moción en Cumplimiento de Orden* instada el 30 de septiembre de 2024, la señora Morales Acevedo reiteró su oposición a que la menor SNM se relacione con el señor Nieves González fuera de Puerto Rico por el momento. Acentuó que, a su entender, el señor Nieves González tenía que lograr establecer lazos afectivos con su hija SNM en Puerto Rico para que ésta se sienta segura con él, previo a concederse la relación paternofilial en el estado de la Florida. En lo que nos atañe al recurso bajo nuestra consideración, puntualizó que la psicóloga que atiende a SNM le expuso que no era el momento para un cambio drástico, por lo que debía realizarse un proceso gradual, tomando en consideración el sentir de la menor SNM. Insistió que no tenía reparo a que su hija SNM se relacionara con el señor Nieves González en Puerto Rico, en un ambiente conocido, mientras se fortalecen los lazos afectivos y se asegura que dicho viaje no afectará la condición emocional de la menor SNM.

En respuesta a la anterior moción, y en lo pertinente, el 7 de octubre de 2024, el señor Nieves González incoó una moción, en la cual expresó su conformidad con las recomendaciones realizadas por la trabajadora social.

Así las cosas, ese mismo día, el Tribunal de Primera Instancia dictó la *Resolución* que hoy revisamos. En esta expresó:

> El 01 y 07 de octubre de 2024, ambas partes por conducto de sus respectivas representaciones legales, Lcda. Rosarito Sepúlveda Ruiz y Lcda. Yadira J. Jusino Rodríguez, presentaron sus respectivas Mociones en cumplimiento de orden, en la que expresan estar de acuerdo con las recomendaciones emitidas.

A su vez, la juzgadora de los hechos determinó acoger las siguientes recomendaciones de la trabajadora social:

> 1. La menor iniciará periodo de transición de forma inmediata en interés de que pueda relacionarse con papá fuera de Puerto Rico. Cuando papá viaje a la isla, la niña deberá permanecer todo el tiempo con él. Éste la llevará a todas las actividades que realice.
> 2. La menor se relacionará con papá todas las veces que éste viaje a Puerto Rico.

3. Las relaciones paternofiliales se llevarán a cabo en el hogar de los abuelos paternos ubicada en 1125 Mery Frances Drive en Kissimmee, Florida. Comenzando este año, la menor se relacionará con papá del 29 diciembre de 2024 al 4 de enero de 2025. Durante el verano, las partes acordarán la semana en que la menor viajará a relacionarse con el padre.

4. Papá acompañará a la menor durante el viaje de Puerto Rico a Florida y mamá lo hará de Florida a Puerto Rico. Papá costeará el pasaje hacia Florida y mamá costeará el de regreso a Puerto Rico.

5. Mientras la menor vacacione con papá, mamá podrá comunicarse con ella diariamente. Papá proveerá los medios para ello. También adquirirá frisa de "Nezuko" solicitada por la menor.

6. El día del cumpleaños de la menor, papá compartirá con ella de 10:00 a.m. a 4:00 p.m., años alternos del día caer fin de semana. De ser día de clases, lo hará desde la salida de la escuela hasta las 7:00 p.m.

7. Las partes se mantendrán informadas de cualquier asunto relacionado a su hija.

8. Las partes coordinarán terapia de comunicación entre padres con la Dra. Carelys Peña, sicóloga, e informarán al tribunal la fecha de inicio de las terapias en un periodo no mayor de 10 días.

En desacuerdo, la señora Morales Acevedo instó una moción de reconsideración. Razonó que, a pesar de que en la *Resolución* dictada por el TPI el 7 de octubre de 2024 se establece que las partes estaban de acuerdo con las recomendaciones de la trabajadora social, lo cierto es que siempre mostró reparo con que la menor SNM se relacione con el señor Nieves González fuera de Puerto Rico. Particularizó que dicha expresión consta en el expediente del caso. Además, adujo que le asiste el derecho a impugnar las recomendaciones concernidas, previo a que fueran acogidas por el Tribunal. Destacó que:

> [L]a TS justifica en su informe que la menor se ha quedado con mamá en la residencia de los abuelos paternos en el Estado de la Florida, donde éstos residen. Las veces que la menor ha viajado con mamá a dicho estado, se ha quedado en hoteles. Dicha aseveración de la TS en su informe es incorrecta.

Por lo anterior, solicitó que se dejara sin efecto la *Resolución* impugnada y se señalara una vista para impugnación de los

hallazgos y recomendaciones de la trabajadora social. Ello, por entender que las recomendaciones no responden al mejor bienestar de la menor SNM. Añadió que la psicóloga debía ser citada para testificar. El señor Nieves González se opuso oportunamente. El foro *a quo* denegó la solicitud de reconsideración en una resolución emitida el 14 de noviembre de 2024.

Aun inconforme, la señora Morales Acevedo comparece ante nos y alega que el foro primario cometió los siguientes errores:

> Erró el TPI al dictar la Resolución acogiendo las recomendaciones realizadas por la TS de la Oficina de Relaciones de Familia sin dar la oportunidad a las partes de impugnar las mismas, en violación al debido proceso de ley.

> Erró el TPI al autorizar unas relaciones paterno filiales en el estado de la Florida, sin tomar en consideración la salud emocional de la menor de edad.

> Erró el TPI al emitir una Resolución que no cumple con la Regla 42.2 de Procedimiento Civil sobre determinaciones de hechos y conclusiones de derecho.

La señora Morales Acevedo también instó una *Urgente Moción en Auxilio de Jurisdicción,* con el propósito de que se suspendieran los efectos de la *Resolución* recurrida hasta que resolviéramos el recurso de *certiorari.* Alegó que, al emitir su dictamen, el TPI, entre otras cosas, concedió unas relaciones paternofiliales en el estado de la Florida donde reside el señor Nieves González, desde el 29 de diciembre de 2024 hasta el 4 de enero de 2025. Arguyó que dicha determinación coloca en riesgo la seguridad de la menor SNM, al no considerar la posición de la terapeuta, sobre el proceso paulatino que debe llevarse a cabo para garantizar que el señor Nieves González tenga un manejo adecuado de SNM. Argumentó que, según la trabajadora social, la menor SNM debía experimentar un periodo de transición previo a vacacionar junto al señor Nieves González fuera de Puerto Rico. A tales efectos, expuso que la decisión objetada no permite que se efectúe el periodo de transición,

el cual debe iniciar de forma inmediata, considerando el diagnóstico de ansiedad generalizada que presenta SNM.

El 6 de diciembre de 2024, el señor Nieves Gonzalez se opuso a la moción en auxilio de jurisdicción. Además, presentó su alegato en oposición a la expedición del auto de *certiorari*.

Con el beneficio de la comparecencia de todas las partes, evaluamos el asunto traído a nuestra atención.

## II

## A.

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *León v. Rest. El Tropical,* 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019).[1] Entre ellos se encuentran los casos de relaciones de familia.

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo

---

[1] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra*.

abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte

que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

De otro lado, sabido es que la custodia es un componente de la patria potestad y se define como "la tenencia o control físico que tiene un progenitor sobre sus hijos". *Torres, Ex parte,* 118 DPR 69, 477 (1987). Al momento de hacer una determinación de custodia, los tribunales deben regirse por el bienestar y los mejores intereses del menor. *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 651 (2016). Tal determinación debe estar precedida de un análisis objetivo y sereno de todos los hechos que rodean la controversia ante la consideración del magistrado. *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 301 (1985). Se deben examinar factores tales como la preferencia del menor, su sexo, su edad, salud mental y física; el cariño que las partes podrían brindarle; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste de éste al hogar, la escuela y la comunidad en que vive; su interrelación con las partes, sus hermanos y otros miembros de la familia, y la salud psíquica de todas las partes, entre otros. *Muñoz Sánchez v. Báez de Jesús,* supra, pág. 651; *Marrero Reyes v. García Ramírez,* 105 DPR 90, 105 (1976).

Cónsono con lo anterior, un tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones materno y/o paternofiliales, no puede actuar livianamente. De ahí que debe contar con la información más completa y variada posible para resolver de forma correcta. *Pena v. Pena,* 164 DPR 949, 959 (2005). Asuntos de esta índole están revestidos del más alto interés público y los tribunales, en protección, y para beneficio, de los menores de edad, y en el ejercicio de su poder de *parens patriae,*

cuentan con amplias facultades y discreción. *Martínez v. Ramírez Tió*, 133 DPR 219 (1993).

### III.

Debido a que la controversia bajo nuestra consideración versa sobre un asunto de relaciones de familia, podemos revisar discrecionalmente la decisión recurrida por vía del auto de *certiorari*, al palio de la Regla 52.1 de Procedimiento Civil, *supra*.

Por su estrecha relación, discutiremos todos los señalamientos de error en conjunto. En esencia, la peticionaria objeta la determinación del TPI de acoger las recomendaciones que surgen de la *Moción sobre Estado del Caso y Recomendaciones*, por entender que lo expresado por la trabajadora social no consideró las recomendaciones de la psicóloga que atiende a la menor SNM. Además, es su contención que la determinación del TPI no permitió que se efectuara el proceso de transición recomendado por la propia trabajadora social y la psicóloga de SNM. Añade que la decisión del TPI de ninguna manera garantiza el bienestar de la menor SNM, quien llevaba separada del señor Nieves González, su padre, desde el 2020.

Por otra parte, la peticionaria arguye que el tribunal de instancia violentó su debido proceso de ley al acoger las recomendaciones de la trabajadora social sin celebrar vista y sin darle oportunidad a las partes de impugnar el informe, contrainterrogar a la trabajadora social y presentar prueba para refutar sus hallazgos. Ello, a pesar de oportunamente haber expresado su desacuerdo fundamentado con las recomendaciones realizadas. En suma, sostiene que siempre manifestó su oposición a que las relaciones paternofiliales se realizaran fuera de Puerto Rico tan pronto como el 29 de diciembre de 2024.

Por su parte, el recurrido está conforme con la decisión objetada y aduce que procede denegar la expedición del auto de

*certiorari.* Esboza que resulta innecesario dilatar el inicio del periodo de transición de la menor SNM recomendado por la Unidad Social, de forma que pueda relacionarse con su hija SNM fuera de Puerto Rico.

Luego de analizar la totalidad de las circunstancias del caso de autos, entendemos que no procede nuestra intervención con la *Resolución* impugnada.

Resulta evidente que las recomendaciones de la trabajadora social son de carácter provisional y que con posterioridad se presentará un informe social final en el cual se atiendan las preocupaciones de ambos progenitores. Ello toda vez que atiende un dictamen del TPI requiriendo informar status del estudio social ordenado. Debemos tener presente que, a fin de cuentas, la prueba que pudiese aportar la peticionaria podría ayudar al Tribunal a evaluar, a la luz de todas las circunstancias existentes, en qué consiste el mejor bienestar de SNM, criterio rector en estos casos.

En armonía con lo anterior, recordemos que la jurisprudencia ha establecido que el Tribunal debe contar con la información más completa y variada posible para resolver de forma correcta los casos ante su consideración. *Pena v. Pena,* supra. Por consiguiente, resulta prudente que el Tribunal de Primera Instancia ordene, en la fecha más próxima posible, la presentación de un informe social completo en el cual se evalúen la totalidad de las circunstancias.

Así, toda vez que la expedición del auto de *certiorari* es de índole discrecional, resolvemos que, de acuerdo con los criterios establecidos en la Regla 40 de nuestro Reglamento, no existe razón para ejercer nuestra función revisora con la determinación impugnada en esta etapa de los procedimientos.

**IV.**

Por las consideraciones que preceden, denegamos expedir el auto de *certiorari* solicitado. Asimismo, se declara *No Ha Lugar* la

urgente solicitud en auxilio de jurisdicción incoada por la señora Morales Acevedo.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La Juez Barresi Ramos concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones