ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **CHRISTOPHER CRUZ ACEVEDO**<br><br>Peticionario<br><br>v.<br><br>**AMANDA CRISTAL ROMÁN VARGAS**<br><br>Recurrida | TA2025CE00522 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.:<br>**AG2025RF00258**<br><br>Sobre:<br>Patria Potestad – Privación o Restricción |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de octubre de 2025.

Comparece ante nos el señor Christopher Cruz Acevedo (señor Cruz Acevedo o parte peticionaria) y solicita que revisemos la *Resolución y Orden* emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de Aguadilla, el 9 de septiembre de 2025. Por virtud del dictamen recurrido, el foro *a quo* acogió las recomendaciones de la trabajadora social asignada al caso y, entre otras cosas, estableció relaciones maternofiliales provisionales.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y modificamos el pronunciamiento objetado.

**I.**

Según surge del expediente, el señor Cruz Acevedo y la señora Amanda Cristal Román Vargas (señora Román Vargas o parte recurrida) son los progenitores de AJCR y BOCR, nacidos en 2013 y 2018, respectivamente. En el 2016, las partes se trasladaron a

residir al estado de Pensilvania y, tras separarse en el 2018, la señora Román Vargas se trasladó a Puerto Rico junto a los menores. El señor Cruz Acevedo se reubicó en el estado de Carolina del Norte.

El 3 de mayo de 2020, la señora Román Vargas se mudó al estado de la Florida junto a los menores. En junio de 2020, tras un incidente de maltrato y negligencia que involucró a la señora Román Vargas y al menor BOCR, en el cual tuvo que intervenir el Departamento de la Familia de Florida, el señor Cruz Acevedo asumió la custodia de sus hijos en Carolina del Norte.

Luego de múltiples incidencias procesales en los tribunales de Puerto Rico y Carolina del Norte, en cuanto a cuál era el *"venue/home state"* de los menores para poder resolver el asunto de la custodia, el 27 de marzo de 2025 el señor Cruz Acevedo se trasladó junto a los menores a Puerto Rico. El 4 de abril de 2025, instó una demanda sobre privación de patria potestad, custodia y alimentos contra la señora Román Vargas.[1] Alegó que procedía su petitorio por las siguientes razones: la madre de sus hijos ha causado daño y ha puesto en riesgo sustancial de sufrir daño o perjuicio predecible a la salud física, mental o emocional de los menores; ha faltado al deber de supervisión y cuidado de los menores cuando se han encontrado bajo su custodia *de facto*; no ha provisto alimento a los menores; no visitaba a los menores ni mantenía contacto con estos para integrarse en su vida; no cumplió con los planes de servicios de las agencias de familia cuando se le ha requerido e incurrió en conducta que, de procesarse por la vía criminal, constituía maltrato y negligencia.

El señor Cruz Acevedo añadió en su demanda que advino en conocimiento que mientras AJCR y BOCR estuvieron en Puerto Rico

---

[1] Véase, además, el caso número IS2020RF00005 - *Amanda C. Román Vargas v. Christopher Cruz Acevedo*; y el caso número AG2022RF00450 - *Amanda Román Vargas v. Christopher Cruz Acevedo*.

bajo la custodia de la señora Román Vargas desde agosto de 2018 hasta mayo de 2020, esta tuvo dos (2) casos de maltrato y negligencia, a saber: un referido de la escuela donde estudiaba el mayor de los hijos por un patrón de tardanzas y ausencias severo, además de que la madre no había obtenido un plan médico para los menores y (2) una llamada anónima de una vecina al Departamento de la Familia que terminó en un plan de servicio que la madre no cumplió. Arguyó que siempre ha procurado el bienestar de AJCR y BOCR, los ha mantenido vacunados, muestran asistencia perfecta en la escuela y atiende sus necesidades más apremiantes, por lo que su bienestar se salvaguarda bajo su custodia. En suma, el señor Cruz Acevedo requirió al TPI que privara de la patria potestad a la madre y estableciera una medida provisional con carácter de urgencia para que esta no pueda sacar a sus hijos de la escuela en la que se encontraban matriculados ante el riesgo a su salud y seguridad; estableciera la custodia monoparental de AJCR y BOCR a su favor; refiriera el caso a la Unidad Social y al Examinador de Pensiones Alimentarias para que, de manera urgente, se impusiera una pensión alimentaria a ser pagada por la madre conforme a derecho; no concediera relaciones maternofiliales hasta tanto la Unidad Social realizara una evaluación exhaustiva ante el patrón de maltrato y negligencia y concediera una suma no menor de $1,500.00 por concepto de honorarios de abogado.

El 15 de abril de 2025, la señora Román Vargas contestó la demanda y negó la mayoría de las alegaciones. A su vez, instó una reconvención contra el señor Cruz Acevedo y adujo que llevaba años intentando mantener contacto y comunicación con AJCR y BOCR. Precisó que interesaba relacionarse con sus hijos y que, aún bajo todas las circunstancias del caso, existían lazos de amor y afecto. Argumentó que no concurrían criterios para privarla de la patria potestad de AJCR y BOCR y que estaba comprometida a asumir la

custodia, la cual no había podido ejercer por actos atribuibles exclusivamente al señor Cruz Acevedo. Además, solicitó al Tribunal relaciones maternofiliales de forma provisional.

Luego de múltiples trámites procesales, el 12 de mayo de 2025, el foro de instancia emitió una *Resolución Interlocutoria,* mediante la cual asumió jurisdicción sobre la materia y refirió el caso a la Unidad Social de Relaciones de Familia para estudio sobre custodia y relaciones maternofiliales. El TPI hizo hincapié en que la Unidad Social debía emitir recomendaciones provisionales sobre relaciones maternofiliales y que existían referidos de maltrato previos atendidos en otras jurisdicciones.

El 22 de junio de 2025, el señor Cruz Acevedo contestó la reconvención. Alegó, en esencia, que la madre de AJCR y BOCR llevaba años totalmente desentendida sobre las responsabilidades para con los menores y no mostraba interés alguno en establecer comunicación con estos, a pesar de que él siempre estuvo disponible cuando residía en el estado de Carolina del Norte para que la madre se comunicara con los menores. Al día siguiente, el TPI dictó una *Orden* y refirió a la Examinadora de Pensiones Alimentarias para evaluación y recomendaciones.

El 11 de julio de 2025, la señora Ayxa I. Arroyo Badillo, trabajadora social de la Unidad Social del Tribunal, presentó una moción, en la cual expuso que efectuó el proceso de entrevistas, visitas a escuelas, observación de dinámica entre padre e hijos y madre e hijos. Apuntaló que pudo precisar que los menores interesaban relacionarse con la señora Román Vargas y que la interacción de ésta última con sus hijos fue positiva. Así, realizó las siguientes recomendaciones al Tribunal: (1) que las relaciones maternofiliales fueran los domingos de 10:00 a.m. a 6:00 p.m.; (2) la entrega y recogido de los menores sea en la entrada del complejo residencial donde vive la señora Román Vargas y (3) la madre

llamara a sus hijos a través de videocámara los lunes, miércoles y viernes entre 6:00 p.m. a 7:00 p.m.

El señor Cruz Acevedo se opuso a las recomendaciones provisionales de la trabajadora social Arroyo Badillo y resaltó que resultaba altamente preocupante que ésta le indicó que no había evaluado a cabalidad los informes del Departamento de la Familia, tanto de Puerto Rico, como del estado de la Florida y, aun así, realizara recomendaciones sin asegurarse del bienestar de los menores. Solicitó al Tribunal que estableciera relaciones provisionales de manera supervisada en un horario particular mientras se evaluaba a cabalidad el patrón de maltrato y negligencia de la madre contra los menores y se garantizaba su bienestar.

El 18 de agosto de 2025, la trabajadora social Arroyo Badillo presentó su *Informe Social Forense*. Expresó que el 30 de junio de 2025 observó la dinámica familiar entre madre e hijos y luego se incluyó abuela y hermano maternos. En cuanto a la dinámica entre madre e hijos, la trabajadora social expuso lo siguiente:

> [P]ese a que la interacción entre madre e hijos ha sido poca desde el 2020, los niños aceptaron alegremente que iban a poder ver a la mamá. Estos invitaron a jugar a mamá. Se mostraron sonrientes. Vieron juntos fotos familiares que mamá llevó y sonreían cuando se identificaban en las fotos. Posteriormente, se integró a la abuela materna de los niños y al hermano materno. Byron conversaba animadamente con la abuela. Mamá le preguntó si han visto a Noemi (madrina). Dijeron que sí y mamá les dijo que ella la quiere mucho. Los niños aceptaron muestras de afecto de mamá.
>
> [...]
>
> Los hallazgos de nuestra intervención muestran que los menores anhelan compartir con su madre. Esta necesidad afectiva existe a pesar de que la relación entre madre e hijo ha sido mínima y Byron expresa que casi no la conoce. Los menores expresaron que las semanas que estuvieron en Puerto Rico con su madre les ofreció buen trato y les gustó estar con ella. No obstante, no podemos obviar los eventos de maltrato que incurrió mamá cuando asumía la custodia de sus hijos.
>
> [...]

Conforme lo anterior, la trabajadora social Arroyo Badillo recomendó relaciones maternofiliales de manera limitada a domingos de 10:00 a.m. a 6:00 p.m., en tanto los lazos afectivos entre madre e hijos se fortalecen y entendió que las visitas no debían ser supervisadas. Ello, toda vez que los menores no mostraron resistencia a relacionarse con la madre y mostraron conductas de aceptación y reconocimiento en calidad de figura materna. La trabajadora social concluyó que la madre tuvo buen manejo hacia los menores durante la observación de dinámica y que era un referente positivo el que la señora Román Vargas asumía de manera adecuada su rol materno con hijo menor y no había requerido de intervenciones del Departamento de la Familia. En cuanto a la custodia de los menores, la trabajadora social no pudo realizar una conclusión hasta tanto tuviera consigo los Informes de Evaluaciones Psicológicas.

En resumen, la trabajadora social recomendó lo siguiente:

1. Las relaciones maternofiliales sean domingos de 10:00 a.m. a 6:00 p.m.
2. La entrega y recogido de los menores sea en la entrada del complejo residencial donde vive la Sra. Román.
3. La madre llame a sus hijos a través de video llamadas lunes, miércoles y viernes entre 6:00 p.m. a 7:00 p.m.
4. Los progenitores asistan al Taller de Padres según sean citados.
5. La familia comparezca a evaluación psicológica el 1 de diciembre de 2025.

Así las cosas, el 9 de septiembre de 2025, el Tribunal de Primera Instancia celebró una vista para discutir los asuntos planteados y, posteriormente dictó la *Resolución y Orden* que hoy revisamos. En esta incluyó las siguientes determinaciones provisionales:

1. El demandante mantendrá la custodia de los menores.
2. Se establecen relaciones maternofiliales provisionales, los domingos de 10:00 a.m. a 6:00 p.m., comenzando el próximo domingo, 14 de septiembre de 2025.

3. La entrega y recogido de los menores será en el Burger King de Isabela.

4. La progenitora se relacionará los lunes, miércoles y viernes entre 6:00 p.m. a 7:00 p.m., mediante videollamadas. El demandante proveerá un número de teléfono donde la madre se pueda comunicar con los menores.

5. Ambos progenitores comparecerán al Taller de Padres, según sean citados.

6. La familia comparecerá a la evaluación psicológica el 1 de diciembre de 2025.

El Tribunal advirtió a las partes que estaban obligados al cumplimiento de lo dispuesto en su dictamen, hasta que otra cosa dispusiera. Asimismo, de la *Minuta* de la vista se desprende que el TPI hizo hincapié en que, una vez se reciban los informes psicológicos de las partes, la trabajadora social Arroyo Badillo emitirá un informe con recomendaciones finales. Añadió que esperará que las partes fueran evaluadas para tomar determinaciones finales.

El 15 y 22 de septiembre de 2025, respectivamente, la señora Román Vargas incoó sendas mociones urgentes de desacato. Alegó que el domingo, 14 de septiembre de 2025 y el domingo, 21 de septiembre de 2025, el señor Cruz Acevedo nunca llegó a entregar a los menores en el lugar pactado. Solicitó que se encontrara incurso en desacato al padre de sus hijos y se le impusieran sanciones económicas ante el mencionado incumplimiento.

De otra parte, el 19 de septiembre de 2025, el señor Cruz Acevedo solicitó reconsideración de la *Resolución y Orden* concernida, a lo cual se opuso la señora Román Vargas. El padre de AJCR y BOCR requirió al foro *a quo* que estableciera las relaciones maternofiliales de manera supervisada mientras no se completaran todas las evaluaciones del caso, incluyendo las psicológicas, y que se llevara a cabo una vista evidenciaria en garantía del debido proceso de ley para garantizar el bienestar de los menores.

El 22 de septiembre de 2025, el TPI emitió una *Resolución Interlocutoria,* por medio de la cual denegó la solicitud de reconsideración e hizo las siguientes expresiones:

> La parte compareciente ha relatado una serie de eventos que datan de más de cinco años atrás, que fueron atendidos en otras jurisdicciones. Sabido es que los asuntos de menores no son cosa juzgada, por lo que se está evaluando cuál es la situación actual de los menores y sus progenitores para tomar nuevas determinaciones. Mientras eso ocurre, las partes están obligadas al cumplimiento de las determinaciones provisionales, so pena de desacato.

En desacuerdo, el señor Cruz Acevedo comparece ante nos y alega que el foro primario cometió el siguiente error:

> Incurrió en error manifiesto el TPI al tomar una decisión de custodia (relaciones materno-filiales provisionales) en violación del debido proceso de ley y sin celebrar una vista evidenciaria en cuanto a una madre que ha cometido actos de maltrato y negligencia contra los menores, con quien no se relacionan hace más de cinco años, incumpliendo esta con los planes de servicio del Departamento de la Familia para mejorar sus destrezas de crianza, señalando una vista en que el peticionario no podía estar presente por una justa causa acreditada e informando la decisión que tomaría el TPI antes de siquiera escuchar a las partes y mostrando un alto desconocimiento del expediente del caso, no estando completadas ni siquiera las pruebas psicológicas, alejándose la determinación del ordenamiento que exige que esté enmarcada en un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso, atentando contra el bienestar y los mejores intereses del menor.

El señor Cruz Acevedo también instó una *Solicitud Urgente de Remedio en Auxilio de Jurisdicción,* con el propósito de que se suspendieran los efectos de la *Resolución y Orden* recurrida en cuanto a las relaciones maternofiliales sin supervisión, hasta que resolviéramos el recurso de *certiorari.* La señora Román Vargas se opuso oportunamente a dicha moción.

Mediante *Resolución* dictada el 29 de septiembre de 2025, declaramos *ha lugar* la solicitud de auxilio de jurisdicción y concedimos término a la señora Román Vargas para presentar su alegato en oposición al recurso de *certiorari.* El 7 de octubre de 2025, esta incoó su alegato.

Con el beneficio de la comparecencia de todas las partes y escuchada la regrabación de la vista celebrada el 9 de septiembre de 2025, evaluamos el asunto traído a nuestra atención.

## II

## A.

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019).[2]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones

---

[2] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, supra.

enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59-60, 215 DPR __ (2025).

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**B.**

De otro lado, sabido es que la custodia es un componente de la patria potestad y se define como "la tenencia o control físico que tiene un progenitor sobre sus hijos". *Torres, Ex parte,* 118 DPR 69, 477 (1987). Sin embargo, el derecho a la custodia está necesariamente subordinado al poder de *parens patriae* que poseen los tribunales; es decir, a la facultad que estos tienen de adoptar las medidas necesarias para procurar el mejor bienestar de los menores. *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645 (2016); *Martínez v. Ramírez Tió,* 133 DPR 219 (1993); *Rodríguez v. Gerena,* 75 DPR 900 (1954).

En vista de ello, el Tribunal Supremo de Puerto Rico ha expresado que el principio cardinal que debe guiar a los tribunales en las determinaciones de custodia debe responder al mejor bienestar del menor. *Maldonado v. Burris,* 154 DPR 161 (2001); *Sánchez Cruz v. Torres Figueroa,* 123 DPR 418 (1989). Tal determinación debe estar precedida de un análisis objetivo y sereno de todos los hechos que rodean la controversia ante la consideración del magistrado. *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 301 (1985). Se deben examinar factores tales como la preferencia del menor, su sexo, su edad, salud mental y física; el cariño que las partes podrían brindarle; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste de éste al hogar, la escuela y la comunidad en que vive; su interrelación con las partes, sus hermanos y otros miembros de la familia, y la salud psíquica de todas las partes, entre otros. *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 651; *Marrero Reyes v. García Ramírez,* 105 DPR 90, 105 (1976).

Cónsono con lo anterior, un tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones materno y/o paternofiliales, no puede actuar livianamente. De ahí

que debe contar con la información más completa y variada posible para resolver de forma correcta. *Pena v. Pena,* 164 DPR 949, 959 (2005).

### III.

Debido a que la controversia bajo nuestra consideración versa sobre un asunto de relaciones de familia, podemos revisar discrecionalmente la decisión recurrida por vía del auto de *certiorari,* al palio de la Regla 52.1 de Procedimiento Civil, *supra.*

En esencia, la parte peticionaria objeta la determinación del TPI de acoger las recomendaciones que surgen del *Informe Social Forense,* por entender que lo expresado por la trabajadora social en cuanto a las relaciones maternofiliales no consideró el mejor bienestar de AJCR y BOCR. En esa dirección, puntualiza que la trabajadora social observó en una sola ocasión la dinámica familiar de la madre con sus hijos y ello no es suficiente para sustentar la recomendación de relaciones maternofiliales sin supervisión. Destaca que no se puede obviar que la madre tiene un historial de negligencia y maltrato en contra de los menores. Reitera que las relaciones maternofiliales deben efectuarse de forma supervisada. Añade que desde que AJCR y BOCR están bajo su custodia asisten con regularidad a la escuela y reciben tratamientos médicos que los han estabilizado emocionalmente. Por igual, esboza que, en el ámbito escolar, los menores han mejorado las conductas que presentaban bajo la custodia de la madre.

Por otro lado, la parte recurrida está conforme con la decisión objetada y aduce que procede denegar la expedición del auto de *certiorari.* Reconoce que la determinación de relaciones maternofiliales efectuada por el TPI es provisional y arguye que la trabajadora social no realizó tal recomendación en el vacío. Sostiene que la decisión no afecta ni pone en riesgo a AJCR y BOCR, quienes

tienen derecho a relacionarse con su progenitora y así lo han expresado.

El caso que nos ocupa versa sobre una cuestión revestida de alto interés público. En reiteradas ocasiones se ha reconocido la facultad del Estado para intervenir con el derecho constitucional de los padres en la guarda y custodia de sus hijos menores cuando situaciones apremiantes, no compatibles con su bienestar y seguridad, así lo requieran. *Estrella, Monge v. Figueroa Guerra*, 170 DPR 644 (2007); *Rivera v. Morales*, 167 DPR 280 (2006). La norma vigente en esta materia dispone que el derecho de los progenitores ha de ceder frente al poder del Estado si incumplen con el deber de suplir las necesidades físicas, afectivas y morales que promueven el efectivo desarrollo de un niño. *Estrella, Monge v. Figueroa Guerra*, supra. Lo anterior, tomando como norte lograr el mejor bienestar del menor.

Conscientes de que este balance de intereses requiere de una muy mesurada y juiciosa evaluación de las circunstancias del caso, así como de los argumentos de las partes involucradas, acordamos intervenir con el ejercicio de discreción efectuado por el TPI y modificar la determinación recurrida. Lo anterior, únicamente a cierto aspecto de las relaciones maternofiliales. Nuestra intervención en esta etapa de los procedimientos es la más propicia. Las alegaciones traídas a nuestra consideración plantean asuntos que deben ser objetivamente evaluados.

Resulta evidente que las recomendaciones de la trabajadora social sobre las relaciones maternofiliales de los domingos de 10:00 a.m. a 6:00 p.m., aunque de carácter provisional, no redundan en el mejor interés de AJCR y BOCR. Tampoco hay controversia sobre el hecho de que la parte recurrida tuvo eventos de maltrato con al menos uno de los menores en los pasados años y ciertamente estos no pueden ser obviados. Asimismo, llama la atención que las

recomendaciones de la trabajadora social surgen luego de la observación de la dinámica familiar **en una sola ocasión**. En un ambiente controlado como ese, el comportamiento adecuado de la parte recurrida era de esperarse. Además, del *Informe Social Forense* se desprende claramente que la interacción entre la parte recurrida y sus hijos ha sido poca desde el 2020. También surge que la trabajadora social expresó que era meritorio evaluar las capacidades protectoras de las partes, así como el estado mental de éstos y el de sus hijos para poder completar recomendaciones concernientes a la **custodia**.

Conforme lo anterior, resolvemos que procede modificar el plan de relaciones maternofiliales dispuesto en la *Resolución y Orden.* Con esta decisión no se trastoca el derecho de la parte recurrida de relacionarse con AJCR y BOCR. Sin embargo, en el interés óptimo de los menores, y tomando en consideración la totalidad de las circunstancias, la interacción entre éstos y su progenitora debe ejecutarse de forma supervisada por un tiempo. En un futuro y de forma ordenada, estructurada y escalonada se podría descartar la supervisión, si los resultados son positivos. Por igual, es nuestro parecer que el producto de la evaluación de los informes de evaluaciones psicológicas de las partes involucradas podría ayudar a la juzgadora de los hechos a justipreciar, a la luz de todas las condiciones existentes, en qué consiste el mejor bienestar de AJCR y BOCR, criterio rector en casos de esta naturaleza.

Solo así el Tribunal podrá constatar que la parte recurrida tiene las herramientas necesarias para relacionarse con sus hijos en un ambiente no controlado. Recordemos que un Tribunal debe contar con la información más completa y variada posible para resolver de forma correcta los casos ante su consideración. *Pena v. Pena,* supra.

**IV.**

Por las consideraciones que preceden, expedimos el auto de *certiorari* y **modificamos** la determinación recurrida, a los únicos efectos de establecer que las relaciones maternofiliales provisionales que se pautaron de forma presencial para los domingos de 10:00 a.m. a 6:00 p.m. serán de forma supervisada, a partir del domingo, **19 de octubre de 2025**. Así modificada, se confirma.

Se devuelve el caso al TPI para la continuación de los procedimientos y para que designe el familiar, recurso y/o método idóneo para supervisar las relaciones maternofiliales.

Al amparo de la Regla 35 (A) del Reglamento del Tribunal de Apelaciones, se deja sin efecto la paralización decretada mediante *Resolución* el 29 de septiembre de 2025. Igualmente, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


                                        Lcda. Lilia M. Oquendo Solís
                                        Secretaria del Tribunal de Apelaciones