Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| Verónica Taveira Tirado  Recurrida  vs.  Manuel H. Malavé Román  Peticionario | TA2025CE00610 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Salas de Familia y Menores de Bayamón  Civil Núm.: D CU2013-0579  Sobre: Patria Potestad |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de noviembre de 2025.

Comparece el señor Manuel H. Malavé Román (Sr. Malavé Román o peticionario), quien nos solicita la revocación de la Resolución emitida el 12 de septiembre de 2025[1], por el Tribunal de Primera Instancia, Sala de Familia y Menores de Bayamón (TPI o foro primario). Mediante el referido dictamen, el foro primario resolvió que las relaciones paterno filiales continuarán suspendidas, condicionadas a que el peticionario cumpla con el Plan de Servicios del Departamento de la Familia.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable, expedimos el auto de Certiorari, y confirmamos la Resolución recurrida, por los fundamentos que expondremos a continuación.

**I.**

El 22 de septiembre de 2014, el foro primario dictó una Sentencia[2] en la cual adjudicó la patria potestad y la custodia

---

[1] Notificada el 15 de septiembre de 2025.
[2] La designación alfanumérica de este caso es D-CU2013-0579.

entre la Sra. Verónica Taveira Tirado (Sra. Taveira Tirado o la recurrida) y el Sr. Malavé Román en el interés óptimo de la menor.

En el año 2024, la recurrida, en representación de su hija, alegó que el peticionario incurrió en maltrato emocional hacia la menor. Tras celebrar una vista, el 23 de abril de 2024, el TPI, Sala Municipal, dictó una Resolución[3], mediante la cual denegó la solicitud de orden protección solicitada por la Sra. Malavé Román. Concluyó que, no se cumplieron los elementos establecidos en la Ley Núm. 57-2023[4]. Sin embargo, ordenó que el padre no se relacionara con la menor hasta que el Departamento de la Familia así lo autorizara.

No obstante, el Sr. Malavé Román recurrió ante este Tribunal de Apelaciones. El 17 de junio de 2024, expedimos el *Certiorari*[5], y revocamos la decisión impugnada. En nuestra Sentencia, razonamos que el TPI, Sala Municipal, no ostentaba autoridad legal para adjudicar la custodia provisional al denegar la orden de protección. Ahora bien, decretamos lo siguiente en atención al bienestar de la menor:

> ***No obstante, el señor Manuel Malavé Román debe cumplir con los cursos, como la escuela de padre que le brindará la Administración de Familias y Niños (ADFAN) para la mejora de su comportamiento y actitud ante la menor, según la recomendación del trabajador social establecida en su Informe Social. Se ordena al Tribunal de Primera Instancia, Sala Municipal de Guaynabo a realizar vistas de seguimiento para asegurarse del cumplimiento del señor Manuel Malavé Román con los referidos cursos del Departamento de la Familia.***[6] (Énfasis nuestro).

Continuados los trámites judiciales, el 6 de noviembre de 2024, el peticionario presentó ante el foro primario una Urgente Moción en Solicitud de Orden. Contextualizó que, enfrentó un proceso legal el cual concluyó con una Sentencia emitida por

---

[3] La designación alfanumérica de este caso es BYL572024-00180.
[4] Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores, 8 LPRA sec. 1641,
[5] La designación alfanumérica de este recurso es KLCE202400614.
[6] Apéndice del recurso de *Certiorari*, Anejo 5, a la pág. 9.

Tribunal de Apelaciones, la cual revocó la Resolución dictada por el TPI, Sala Municipal. Subrayó que, el foro intermedio apelativo resolvió que el foro primario estaba impedido a determinar los asuntos relativos a la custodia o las relaciones paterno filiales. Por lo anterior, el peticionario requirió que se efectuara una investigación de enajenación parental a cargo de la Unidad Social de Relaciones de Familia y Asuntos de Menores del Tribunal de Primera Instancia (Unidad Social del TPI), para que se restituyera su relación parental con la menor.

Por su parte, el 24 de noviembre de 2024, la Sra. Taveira Tirado radicó una Moción Urgente en Oposición a: Urgente Moción en Solicitud de Orden y en Solicitud de Suspensión de Relaciones Paterno Filiales, Solicitud se Custodia Monoparental y Privación Provisional de Patria Potestad. **En esencia, alegó que la menor le verbalizó que su padre exhibe un comportamiento violento, pues le grita cuando se encuentra molesto, lanza objetos cerca de esta, y golpea las paredes frente a ella. A la luz de la prueba documental adjuntada a su moción, solicitó como medida cautelar suspender las relaciones paterno filiales hasta que el Departamento de la Familia rindiese un informe con sus respetivas recomendaciones.**

Tras una serie de eventos procesales, que no ameritan pormenorización, el 18 de febrero de 2025, el TPI emitió una Orden en la cual decretó que la Sra. Torres Quiñones, trabajadora social de la Unidad Social del TPI, llevara a cabo una discusión del caso con la señora Leyda Massas Crespo (Sra. Massas Crespo), trabajadora social del Departamento de la Familia.

El 10 de marzo de 2025, el peticionario presentó una Moción en Cumplimiento de Orden y Urgente Moción en Solicitud de Remedios. Nuevamente, requirió que se asignara al caso un profesional de la conducta de la Unidad Social, para trabajar el

proceso de reunificación con la menor. En respuesta, el 12 de marzo de 2025, el foro primario emitió una Resolución, en la cual le ordenó a la Unidad Social a designar el recurso correspondiente para trabajar la reunificación de la menor con su padre.

No obstante, el 17 de marzo de 2025, la recurrida sometió una Réplica a Moción en Cumplimiento de Orden y Solicitud de Remedios. Reiteró que, la menor le ha manifestado que su padre ha desplegado un comportamiento violento frente a esta. Adujo, además que, a raíz de las alegaciones de maltrato emocional, existe una investigación ante la Unidad Social y el Departamento de la Familia. Por ello, solicitó que, como medidas cautelares, que: (1) se otorgue la custodia monoparental a su favor, (2) se suspendan las relaciones paterno filiales, y (3) se prive provisionalmente al peticionario de la patria potestad.

A la luz de lo anterior, el 20 de marzo de 2025, el foro primario dictó una Orden[7], en la cual dispuso lo siguiente:

> ***Por el momento se suspenden las relaciones paterno filiales. Los asuntos en controversia serán atendidos el día de la vista. Demandado, en un término de 15 días, deberá acudir al Departamento de la Familia para comenzar plan de servicios.***[8] (Énfasis nuestro).

Continuados los procedimientos judiciales, 4 de junio de 2025, el TPI le ordenó a la trabajadora social del Departamento de la Familia, la Sra. Massas Crespo, que coordinara con el peticionario las citas para el proceso de reunificación familiar. Sin embargo, el 25 de junio de 2025, el peticionario presentó una Moción en Solicitud de Desacato por Negatoria Expresa a Cumplir Orden Judicial. En síntesis, sostuvo que compareció a la cita calendarizada ante el Departamento de la Familia, en donde se celebró una reunión para reorientarle sobre el referido de maltrato.

---

[7] Surge del expediente ante nos que, el peticionario interpuso una solicitud de reconsideración respecto a este dictamen. No obstante, el 24 de abril de 2025, el foro primario declaró No Ha Lugar dicha petición.

[8] Apéndice de recurso de *Certiorari*, Anejo 20, a la pág. 2.

No obstante, precisó que compareció a la agencia para calendarizar la cita, según estableció la orden judicial, y no para el proceso de reorientación. Por lo anterior, peticionó que se declarara incurso de desacato al Departamento de la Familia.

Luego, el 30 de junio de 2025, el Sr. Malavé Román sometió una Moción en Solicitud de Desacato por Incumplimiento con Derechos de la Patria Potestad y Orden Judicial de Marzo 2025 contra la Sra. Taveira Tirado. Arguyó que, la recurrida optó por llevar a la menor a la Dra. Pico Palou, psicóloga, sin su autorización. Por tanto, solicitó que se encontrara a la Sra. Taveira Tirado incurso por privarle de sus derechos concernientes a la patria potestad.

Así las cosas, el 3 de julio de 2025, la Sra. Massas Crespo informó al foro primario el estado actual de la investigación ante el Departamento de la Familia. **Indicó que intentó dialogar con el Sr. Malavé Román, pero este le manifestó que toda comunicación debía ser mediante el tribunal. Por tales hechos, expuso que no se reprogramaron las citas, pues el peticionario se muestra renuente al proceso, lo cual impide establecer el Plan de Servicios.**

En vista de lo anterior, el foro primario emitió una Orden a los fines de que las partes se expresaran respecto a la comunicación remitida por el Departamento de la Familia.

Posteriormente, el 16 de julio de 2025, el Sr. Malavé Ramos presentó una Moción en Solicitud de Remedios. Entre otros extremos, peticionó que se ordene a la trabajadora social de la Unidad Social a iniciar el proceso de reunificación familiar.

En respuesta a la solicitud de desacato, el 17 de julio de 2025, la Sra. Taveiro Tirado radicó una Moción en Oposición a Solicitud de Desacato y Otros Extremos, así como una Oposición a Moción en Solicitud de Remedios. En el primer escrito, indicó que

la menor visita a la Dra. Pico Palou porque con esta se siente cómoda para ventilar todos los sucesos ocurridos con el peticionario. En el segundo, solicitó que no se concedieran los remedios peticionados por el Sr. Malavé Román a los fines de que se continúen los procedimientos ante el Departamento de la Familia de conformidad con la Ley Núm. 57-2023, *supra.*

Ese día, el TPI emitió una Orden, en la cual dispuso que la Sra. Torres Quiñones informara dentro del término de 20 días, si es necesaria la intervención del Departamento de la Familia.

Así las cosas, el 30 de julio de 2025, la Sra. Torres Quiñones presentó una Moción de la Unidad Social. En esta, informó que el 18 de marzo de 2025, sometió una moción para informar el plan de trabajo que se llevaría a cabo en atención a este caso. **También, indicó que el 18 de febrero de 2025 notificó al foro primario sobre su discusión del caso con la Sra. Massas Crespo. Subrayó que existe un referido fundamentado por maltrato y negligencia emocional en contra del peticionario ante el Departamento de la Familia. Sin embargo, este no se ha sometido al Plan de Servicios establecidos por dicha agencia.**

Por su parte, el 13 de agosto de 2025, el Sr. Malavé Román interpuso una Enérgica Oposición a Moción de Unidad Social. Reiteró que, el foro intermedio apelativo revocó la Resolución emitida por el TPI en cuanto a la suspensión de las relaciones paterno filiales, lo cual constituye ley del caso. Por ello, solicitó que se comience el proceso de reunificación familiar, y se designe al personal de la Unidad Social a tales fines.

Examinados los argumentos de las partes, el 12 de septiembre de 2025, el foro primario emitió la Resolución, notificada el 15 de septiembre de 2025, en la cual dispuso que continúan suspendidas las relaciones paterno filiales:

> *Se ordena la paralización de los servicios de la Dra. María Pico Palou.*
>
> *Ante la alegación del Sr. Manuel H. Malavé Román que la Sra. Verónica Taveira Tirado unilateralmente escogió a la Dra. Pico como psicóloga de la menor, el Tribunal le ordena a la Trabajadora Social Amarilis Quiñones presentar tres profesionales para ofrecer servicios psicológicos.*
>
> *Evaluada la Sentencia del Tribunal de Apelaciones donde indica que el Sr. Malavé "...debe cumplir con los cursos como la escuela de padre que brindará la Administración de Familias y Niños (ADFAN) para la mejora de su comportamiento y actitud ante la menor, según la recomendación de la trabajadora social establecida en su Informe Social."*
>
> *Se mantienen suspendidas las relaciones paterno filiales condicionadas a que el Sr. Malavé cumpla con el Plan de Servicio del Departamento de la Familia.*[9] (Énfasis nuestro).

Inconforme, el 14 de octubre de 2025, el Sr. Malavé Román recurrió ante este Tribunal de Apelaciones mediante un recurso de *Certiorari*, en el cual esbozó los siguientes señalamientos de error:

> *Primer Error: erró el Tribunal de Primera Instancia en su interpretación de la Sentencia emitida por este distinguido Foro del pasado 17 de junio de 2024 al restituir por fiat judicial la Resolución que precisamente revocó el Foro Intermedio mediante Sentencia que advino final, firme e inapelable. Además, erró al [sic] y al suspender las relaciones paternofiliales en ausencia de una Orden de Protección y condicionar su comienzo a que se cumpla con un plan de servicios del DF, que hay fue también resuelto al revocarse la Resolución del Foro Municipal.*
>
> *Segundo Error: Erró el Tribunal de Primer Instancia y ha violado el derecho constitucional del demandado, al expedir una Resolución cuyo efecto legal y jurídico es el mismo que una Orden de Protección al amparo de la Ley 57, que fue revocada, y en violación al debido proceso de ley al utilizar la recomendación de la TS Massas sin que el padre pudiera ejercer el derecho a la confrontación de la TS Massas del DF quien insite [sic] en que se mantenga los extremos de la Resolución revocada.*
>
> *Tercer Error: Erró el Tribunal de Primera Instancia y continúa errando al perpetuar la enajenación parental e impedir o no conceder la solicitud de reunificación familiar en el contexto terapéutico y confundir conceptos esenciales en las determinaciones de las salas de*

---

Apéndice del recurso de *Certiorari*, Anejo 2, a la pág. 1.

*familias que precisamente que precisamente son remedios para evitar la crasa violación de derechos constitucionales de los progenitores y más importante aun para mantener la unidad familiar y preservación de lazos y vínculos afectivos en beneficio del menor y en profilaxis a la enajenación parental.*

El 16 de octubre de 2025, emitimos una Resolución, en la cual le concedimos a la parte recurrida un término a vencer el 5 de noviembre de 2025 para presentar su alegato en oposición. A su vez, le apercibimos que, de no comparecer dentro de dicho término, procederíamos a dar por perfeccionado el caso sin su comparecencia. Transcurrido el exceso del plazo otorgado para presentar su oposición, procedemos a resolver.

**II.**

**A.**

Es norma reiterada que, el auto *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Art. 670 del Código de Enjuiciamiento Civil, Ley Núm. 6 del 31 de marzo de 1933, 32 LPRA sec. 3491. La característica distintiva de recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

En aras de orientar la discreción judicial, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita aquellas circunstancias que permiten la intervención de este Tribunal de Apelaciones para atender ciertas determinaciones interlocutorias:

*El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una*

*resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, **en casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.* (Énfasis nuestro).

Nuestra autoridad se activa de mediar alguna de estas instancias. Ello, pues, la regla procesal aludida establece que ciertos dictámenes interlocutorios pueden: (1) afectar sustancialmente el resultado del pleito, o (2) tener efectos limitativos para la defensa o reclamación de una parte, o (3) conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847-848 (2023) (citando a e R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal *civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, págs. 533).

No obstante, una vez se adquiere jurisdicción en virtud de la Regla 52.1 de Procedimiento Civil, *supra*, la expedición del auto y su adjudicación en los méritos es discrecional. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En armonía con lo anterior, la Regla 40 del Tribunal de Apelaciones, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, a las pág. 52, 215 DPR __ (2025), delimita los siguientes criterios para ponderar la expedición del auto solicitado:

> *A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.*
>
> *B. Si la situación de hechos planteada es la más indicada para analizar el problema.*

> *C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> *D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> *E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> *F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> *G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Nótese que, la regla precitada facilita que la evaluación respecto a la expedición del recurso no transcurra en el vacío ni en ausencia de otros parámetros. *IG Builders et al.* v. *BBVAPR*, a la pág. 338; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Así pues, al examinar si procede la expedición del caso nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración. *Torres González v. Zaragoza Meléndez, supra,* a la pág. 849. Por la naturaleza extraordinaria de este recurso, no debemos intervenir en las determinaciones de hechos del Tribunal de Primera Instancia, salvo que se pruebe que actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

**B.**

Las instituciones de la patria potestad y las relaciones filiales están revestidas de un alto interés público y social para garantizar el bienestar del menor. *Rexach v. Ramírez*, 162 DPR 130, 153 (2004). Así, pues, las relaciones filiales se refieren al derecho que corresponde naturalmente al padre o a la madre para

comunicarse y relacionarse con aquellos hijos que por resolución judicial han sido confiados a la custodia del otro. *Sterzinger v. Ramírez*, 116 DPR 762, 775 (1985). Por su transcendencia, "el derecho a mantener relaciones con sus hijos es tan importante que los tribunales pueden regular las relaciones paterno filiales, pero no pueden prohibirlas totalmente, a menos que existan causas muy graves para hacerlo". Íd., a las págs. 75-776.

Ahora bien, el derecho a las relaciones familiares no es absoluto, pues puede limitarse en aras de proteger un interés apremiante del Estado, como lo es el bienestar de los menores. *Rivera v. Morales*, 167 DPR 280, 290 (2006); *Rexach v. Ramírez, supra*, a la pág. 146. En virtud de ello, el Tribunal Supremo de Puerto Rico ha establecido que el Estado goza del poder denominado *parens patriae*:

> ***El poder de parens patriae limita los derechos de otras partes, a fin de salvaguardar el bienestar de quien no puede abogar por los suyos. Es la función social y legal que el Estado asume y ejerce para cumplir con su deber de brindar protección a los sectores más débiles de la sociedad. Es por eso que cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor se debe resolver a favor del menor****. Ortiz v. Meléndez,* 164 DPR 16, 27-28 (2005). (Énfasis nuestro).

Cónsono con lo anterior, el Máximo Foro estatal ha reconocido que "el interés del menor está revestido en nuestra jurisdicción del más alto interés público y que los tribunales, en protección de ese interés y en el ejercicio del poder de *parens patriae*, tienen amplias facultades y discreción". *Martinez v. Ramírez Tió*, 133 DPR 219, 225-226 (1993). En esa dirección, el Art. 591 del Código Civil, Ley Núm. 55-2020, según enmendado (Código Civil), establece que los progenitores pueden solicitar el auxilio judicial cuando se atenta contra su patria potestad o cuando se amenaza o está en peligro la integridad física, mental o emocional del hijo. 31 LPRA sec. 7243. Por su parte, el Art. 608

de la ley aducida prescribe que, mediante decreto judicial, se adoptarán las medidas cautelares que se estimen convenientes para la protección de su persona y de sus bienes. 31 LPRA sec. 7301. A su vez, el Art. 618 del Código Civil, *supra*, preceptúa que el tribunal podrá limitar el derecho a relacionarse con el menor si median las siguientes circunstancias:

> *El progenitor que no ejerce la custodia tiene derecho a comunicarse con el hijo, a visitarlo y a tenerlo en su compañía.*
>
> *Si no hay acuerdo entre los progenitores, el tribunal determinará el tiempo, el modo y el lugar de estas relaciones. **Para proteger la integridad física y emocional del hijo, el tribunal puede limitar o suspender dichas relaciones si existen circunstancias graves que así lo aconsejen o si el progenitor incumple reiteradamente los deberes impuestos en la sentencia o reconocidos en este Código**.* 31 LPRA sec. 7331. (Énfasis nuestro).

## C.

A la luz de esta normativa, el Estado tiene el deber de proteger a los menores desamparados y a aquellos que son víctimas de maltrato. *Rivera Báez, Ex parte*, 170 DPR 678, 697 (2007). Por tal motivo, la Asamblea Legislativa de Puerto Rico adoptó la Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores, Ley Núm. 57-2023, 8 LPRA sec. 1641, según enmendada, (Ley Núm. 57-2023). Esta legislación en su Exposición de Motivos dispone lo siguiente:

> *[E]l Gobierno no puede esperar a que un menor sea víctima de maltrato o negligencia para intervenir y tratar de remediar la situación. Por ende, la mejor política requiere que el enfoque, como primera alternativa, sea la prevención del maltrato y negligencia, así como la preservación de la unidad familiar por medio de una intervención temprana con familias donde exista un riesgo de esta índole para el menor, y por medio de la provisión de servicios a estos de consejería, tratamiento, educación, entre otros, que sean basados en evidencia e informados en trauma. Lo anterior es factible siempre y cuando la permanencia del menor con su familia garantice su seguridad y mejor bienestar.*

El Art. 2 de la Ley Núm. 57-2023, *supra,* reconoce una serie de derechos que amparan a los menores:

> *Los menores tienen derecho a la vida, a una buena calidad de vida y a un ambiente sano, en condiciones de dignidad y goce de todos sus derechos en forma prevalente. La calidad de vida es esencial para su desarrollo integral, acorde con la dignidad del ser humano. Este derecho supone la generación de condiciones que les aseguren desde la concepción, sin menoscabar lo establecido en el Artículo 70 de la Ley 55-2020, según enmendada, conocida como "Código Civil de Puerto Rico", el cuidado, la protección, la alimentación nutritiva y equilibrada, el acceso a los servicios de salud, la educación, el vestuario adecuado, la recreación y la vivienda segura dotada de servicios públicos esenciales en un ambiente sano. Por ello, la política pública del Estado Libre Asociado de Puerto Rico está orientada hacia el fortalecimiento de los menores y sus familias. De igual manera, proveerá para que se establezcan esfuerzos razonables de apoyo y fortalecimiento a las familias en la prevención del maltrato a menores y en la promoción de los valores que permiten una convivencia fundamentada en el respeto a la dignidad humana y al valor de la paz. Esta política pública es de enfoque multisectorial e involucra al Gobierno del Estado Libre Asociado de Puerto Rico, a las familias y a la sociedad.* 8 LPRA sec. 1642

A tales efectos, el inciso (cc) del Art. 3 de la Ley Núm. 57-2023, *supra,* define el mejor interés del menor, como lee a continuación:

> *Conjunto de acciones y procesos tendentes a garantizarle a un menor su desarrollo integral y una vida digna, así como las condiciones materiales y afectivas que le permitan vivir plenamente y alcanzar su máximo potencial y desarrollo, incluyendo, pero sin limitarse a, factores que afecten su bienestar físico, mental, emocional, familiar, educativo, social, la salud y su seguridad.* 8 LPRA sec. 1643.

En aras de garantizar el mejor interés de los menores, la precitada ley contempla la integración de las agencias de conformidad con el Art. 2 del precitado texto legislativo:

> *Para garantizar el fiel cumplimiento con la política pública dispuesta en esta ley, las agencias y municipios del Estado Libre Asociado de Puerto Rico prestarán atención prioritaria a las situaciones de menores en riesgo de ser ubicados en cuidado sustituto, riesgo inminente o que hayan sido víctimas de maltrato, maltrato institucional, negligencia o negligencia institucional que advengan a su conocimiento. Tendrán el deber de coordinar sus esfuerzos entre sí cuando se requiera la prestación de servicios relacionados con la*

*identificación, prevención o tratamiento de los menores que se encuentren en estas circunstancias.*

*La coordinación de las agencias y los municipios deberán regirse por las guías, reglamentación o normativas establecidas por el Departamento de la Familia en función de los objetivos y disposiciones contenidas en esta ley. Esto incluirá la capacitación y adiestramientos periódicos sobre aspectos tales como el acercamiento informado en prevención, trauma y prácticas basadas en evidencia para todas las agencias gubernamentales y demás entidades participantes que estén relacionados con la prestación de servicios a los menores y las familias. Incluirá también la planificación conjunta, servicios de educación pública e información, utilización de las instalaciones de unos y otros, adiestramientos y actividades conjuntas para el desarrollo del personal, evaluación y manejo de los casos.* 8 LPRA sec. 1642.

Para viabilizar la intervención administrativa, el inciso (pp) del Art. 3 de la Ley Núm. 57-2023, *supra,* delega al Departamento de la Familia la implementación del Plan de Servicios, que consiste en un documento desarrollado por la persona designada por dicha agencia, en el cual se traza un plan para garantizar que el menor reciba cuidado seguro y adecuado. A su vez, mediante esta documentación se establecen los servicios dirigidos a los padres para mejorar las condiciones en el hogar del menor. 8 LPRA sec. 1642.

**III.**

De entrada establecemos que, de conformidad con los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* este foro apelativo intermedio se encuentra en posición de expedir el auto solicitado. En virtud de la discreción que ostentamos, procedemos a resolver la controversia ante nuestra consideración.

En el recurso de epígrafe, el Sr. Malavé Román alega que el foro primario resolvió contrario a lo dispuesto en la Sentencia emitida el 17 de junio de 2024 por el Tribunal de Apelaciones. Señala que, el referido dictamen apelativo establece que el TPI no ostenta autoridad legal para suspender las relaciones paterno

filiales, pues denegó la orden de expedición solicitada en su contra. Arguye que, a pesar de existir tal determinación, el foro primario optó por suspender las relaciones paterno filiales sin celebrar una vista. En vista de ello, nos solicita que revoquemos del dictamen impugnado. No le asiste la razón.

Luego de evaluar sosegadamente el recurso presente, determinamos que el TPI actuó correctamente al resolver que las relaciones paterno filiales continúan suspendidas, condicionadas a que el peticionario cumpla con el Plan de Servicio del Departamento de la Familia. Adelantamos que la medida cautelar adoptada por el foro primario procura garantizar el bienestar físico y emocional de la menor, mientras se ventilan los procedimientos ante el tribunal recurrido y el Departamento de la Familia. Veamos.

Surge del expediente ante nos que, existe un referido por maltrato emocional y negligencia ante el Departamento de la Familia en contra del Sr. Malavé Román. En vista de ello, el 20 de marzo de 2025, el TPI, Sala de Familia y Menores, dictó una Orden, en la cual dispuso lo siguiente:

> ***Por el momento se suspenden las relaciones paterno filiales. Los asuntos en controversia serán atendidos el día de la vista. Demandado, en un término de 15 días, deberá acudir al Departamento de la Familia para comenzar plan de servicios.***[10] (Énfasis nuestro).

Continuados los procedimientos de seguimiento, el 3 de julio de 2025, la Sra. Massas Crespo, trabajadora social del Departamento de la Familia, informó al foro primario que el peticionario se ha manifestado renuente ante la intervención agencial.[11] Por tal motivo, sostuvo que no se han calendarizado las citas para establecer el Plan de Servicios. Igualmente, el 30 de julio de 2025, la Sra. Torres Quiñones, trabajadora social de la

---

[10] Apéndice de recurso de *Certiorari*, Anejo 20, a la pág. 2.
[11] Apéndice del recurso de *Certiorari*, Anejo 27, a las págs. 3-5.

Unidad Social del TPI, indicó que el Sr. Malavé Román aún no ha completado el Plan de Servicios ante Departamento de la Familia.[12] Por tanto, recalcó que es necesario que el padre colabore con dicha agencia a los fines de fortalecer sus capacidades protectoras:

> ***Ante los hallazgos, entendemos necesario que el padre complete su plan de servicios y fortaleza sus capacidades protectoras con el fin de garantizar que posea las herramientas necesarias para el manejo adecuado de la disciplina sin incurrir en maltrato emocional.***[13] (Énfasis nuestro).

Ante tales circunstancias, colegimos que el TPI, Sala de Familia y Menores, procedió conforme a derecho al emitir la Orden del 2 de septiembre de 2025, en la cual estableció que continúan suspendidas las relaciones paterno filiales. Precisamos que el tribunal recurrido ostenta la autoridad legal para modificar de manera provisional las relaciones familiares acordadas en la Sentencia de año 2014, en aras de salvaguardar el interés óptimo de la menor.

Recordemos, pues, que, en nuestro ordenamiento jurídico, los tribunales estamos llamados a amparar a los menores para garantizar su integridad física y emocional en aquellas circunstancias que así lo ameritan, como ocurre en el caso presente. Así pues, los foros judiciales, en protección de ese interés y en el ejercicio del poder de *parens patriae* gozamos de amplias facultades y discreción. Véase *Martinez v. Ramírez Tió, supra*, a las págs. 225-226. A luz de esta normativa, razonamos que la medida cautelar adoptada por el tribunal recurrido salvaguarda la estabilidad física y emocional de la menor, mientras continúan los procedimientos ante el Departamento de la Familia y el TPI. Asimismo, puntualizamos que el dictamen objeto de revisión judicial descansa en la política pública que rige las relaciones familiares dispuesta en los Arts. 591, 608 y 618 del

---

[12] Apéndice del recurso de *Certiorari*, Anejo 32, a las págs. 1-2.
[13] Apéndice del recurso de *Certiorari*, Anejo 32, a la pág. 2.

Código Civil, *supra,* y la Ley Núm. 57-2023*, supra,* cuya finalidad es salvaguardar el interés óptimo de los menores.

En vista de ello, concluimos que el foro primario no erró al resolver que deben continuar suspendidas las relaciones paterno filiales, condicionadas a que el peticionario cumpla con las citas ordenadas ante el Departamento de la Familia. Por consiguiente, reiteramos que la determinación impugnada es consistente con la totalidad de la totalidad de la prueba obrante en el expediente, y no se aparta de las normativas procesales y sustantivas que dimanan del campo jurídico. En virtud de este razonamiento, confirmamos la determinación recurrida, toda vez que no refleja error manifiesto, prejuicio, parcialidad o abuso de discreción por parte del foro primario.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de esta Sentencia, expedimos el auto de *Certiorari* y confirmamos el dictamen emitido por el Tribunal de Primera Instancia, Sala de Familia y Menores de Bayamón. Se devuelve el caso al foro primario para seguimiento y continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones